COLUMBUS AUCTION HOUSE, INC., ET AL., APPELLANTS, *v.*
THE STATE OF OHIO ET AL., APPELLEES.

(No. 79AP-887—Decided June 17, 1980.)

*Bradley & Farris Co., L.P.A.,* and *Mr. Philip R. Bradley,*
for appellants.

*Mr. William J. Brown,* attorney general, and *Mr. Rodney
B. Teague,* for appellee state of Ohio.

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Patrick
McGrath* and *Mr. Larry H. James,* for appellee city of
Columbus.

*Mr. Michael Miller,* prosecuting attorney, *Mr. David
Korn* and *Mr. William G. Huggins,* for appellee Franklin
County.

WHITESIDE, J.   Plaintiffs appeal from the judgment of
the Court of Common Pleas of Franklin County and raise four
assignments of error as follows:

"I.  The trial court erred in failing to hold Ohio Revised
Code Section 3713.09 and the related Bedding Advisory Board

Rules 4101:6-1-02(E) and 4101:6-1-24 unconstitutional as violative of Plaintiff-Appellants' rights to due process. The possibility of impairment to health caused by secondhand articles of bedding and stuffed toys is infinitesimally remote and is exceeded by acceptable levels of health hazards encountered in daily life. Accordingly, such secondhand items are not proper subjects for State action within the State's police power.

"II. The trial court erred in failing to hold said statutes and rules unconstitutional as violative of Plaintiff-Appellants' rights to due process and equal protection of the law. Even if the secondhand items regulated are within the State's police power, the remedy imposed by the Legislature and the Bedding Advisory Board is unduly oppressive upon Plaintiff-Appellants in relation to any possible benefit to the public health.

"III. The trial court erred in failing to hold said statutes and rules unconstitutional as violative of the privileges and immunities clause, Plaintiff-Appellants' rights to due process, equal protection of the laws and freedom to contract. There is no rational basis for distinguishing between the sellers who regularly engage in the sale of secondhand articles of bedding and stuffed toys, to whom the statutes and rules are applicable, and other classes whose use of such articles presents a greater risk to the public health, to whom the statutes and rules are not applicable.

"IV. The trial court erred in failing to hold the Bedding Advisory Board Rules unconstitutional as violative of Plaintiff-Appellants' right to due process. Said rules exceed the scope of the statutes and are violative of due process, whether or not the statutes are struck down."

Plaintiffs brought this action seeking a declaratory judgment determining the constitutionality of R. C. 3713.051 and 3713.09 and the rules adopted thereunder by the Ohio Bedding Advisory Board. After a trial on the merits, the trial court rendered a written decision, determining both the statutes and the rules to be constitutional, stating in part that:

"***While Plaintiffs have presented a series of both expert and lay witness[es] in an effort to show that the risk of the transmission of infection and/or vermin is minimal and the financial burden of sterilization is heavy, the fact remains that there is a risk to the public health and the legislature has

responded in a rational fashion to that risk with legislation aimed at this one particular problem.***The General Assembly has adopted legislation dealing with one facet of a public health problem involving infectious diseases by imposing a sterilization requirement on dealers who would obviously deal with more used bedding and have some level of inventory than would the casual seller who might once in many years sell a mattress or chair at a garage sale. Both the volume of business and the probable commingling of inventory creates a rational basis for the statutory distinction present here.

"The Court does not find the evidence as to the alleged crushing financial impact on the used furniture trade to be convincing. It appears from the evidence that sterilization can be performed at a commercially reasonable cost that does not constitute an undue burden on plaintiffs in light of the public health interests involved.

"The Court also does not find that the rules of the Bedding Advisory Board are unduly broad or beyond the appropriate statutory scope."

R. C. 3713.051 and 3713.09, together with the Bedding Advisory Board rules, require dealers of secondhand bedding and stuffed articles to sterilize all such items prior to sale. At trial, plaintiffs presented testimony of several secondhand furniture dealers who stated that they had never encountered bedbugs, lice, or other vermin on any form of bedding. Plaintiffs also presented expert testimony to the effect that the comparative risk of transmission of bedbugs or other vermin from used bedding to people is no greater than that in common places, such as hotels, motels, or children's summer camps. Plaintiffs also presented testimony to the effect that the financial burden of disinfecting these items is so great and oppressive that it would be difficult for secondhand dealers to remain in business.

Defendants, on the other hand, presented evidence to the effect that there have been some incidents where bedbugs and other vermin created a problem in that they were transmitted from bedding to people. Defendants also presented evidence that bedbugs and other vermin could survive in mattresses for several weeks without a "warm host" and that this is where bedbugs most often thrive when not on a "warm host." Defendants also presented evidence that the cost of disinfecting

secondhand bedding is not burdensome and oppressive, and that such disinfecting will not destroy or damage wood or the finish on antique furniture.

Predicated upon this evidence, the trial court made the conclusions set forth above, finding both the statutes and the rules to be constitutional. Apparently, in cases of conflict, the trial court accepted defendants' evidence rather than plaintiffs' evidence.

By the first assignment of error, plaintiffs contend that the statutes violate their rights to due process, contending that the possibility of impairment to health caused by secondhand articles of bedding and stuffed toys is infinitesimally remote when compared to levels of health hazards encountered in daily life.

R. C. 3713.09 provides, in pertinent part, that:

"***No person shall sell, offer for sale, or have in his possession for the purpose of sale any secondhand articles of bedding or a secondhand stuffed toy which has not been sterilized in accordance with section***[3713.051] of the Revised Code.***"

R. C. 3713.051 provides as follows:

"As used in this section, 'secondhand stuffed toy' means any stuffed toy which has been used by any person or animal and is sold or offered for sale as is. The seller of any secondhand articles of bedding or any secondhand stuffed toys shall, prior to sale, sterilize all the items in accordance with rules of the bedding advisory board. This section shall apply only to sellers who regularly engage in the sale, either at retail or wholesale, of secondhand articles of bedding or secondhand stuffed toys and does not apply to casual sales from the home of the owner directly to the purchaser."

Since no fundamental right is involved, the issue is whether there is a rational basis for the legislation, furthering a legitimate legislative objective. The tests to be applied are well stated in the fifth and sixth paragraphs of the syllabus of *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, as follows:

"5. Although almost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, within the meaning of Section 1 of Article I of the Ohio Constitution, or involve an injury to a person within the meaning

of Section 16 of Article I of that Constitution, or deprive a person of property within the meaning of Section 1 of Article XIV of the Amendments to the Constitution of the United States, an exercise of the police power having such an effect will be valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary [*sic*].

"6. Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them." See, also, *Davis* v. *State* (1928), 118 Ohio St. 25, at 28-29, appeal dismissed (1928), 277 U. S. 571.

Accordingly, since public benefits must be balanced against private burdens such that they are commensurate with each other, the court will not invalidate a statute unless it clearly bears no real and substantial relationship to the public health, safety and welfare. There is a presumption that the statutes bear such a relationship to the public health, safety and welfare; and, the burden was upon plaintiffs to prove, at least, by a preponderance of the evidence, that such relationship does not exist.

In support of their position, plaintiffs presented evidence of several secondhand furniture dealers to the effect that they had never seen a bedbug or other vermin on any mattress or otherwise in the used furniture business. Plaintiffs presented expert testimony that the comparative risk of transmission of bedbugs or other vermin from used bedding to people is no greater than in a motel or hotel, or a children's summer camp in which there is used bedding. In addition, plaintiffs presented evidence that the burden and expense of disinfecting mattresses in compliance with the statutes and the rules adopted pursuant thereto will be so burdensome as to force secondhand furniture dealers out of business and would have the effect of destroying the finish on antique furniture. In addition, evidence was adduced that the chemicals required to spray furniture causes problems for people with asthma.

On the other hand, defendants presented evidence that the law requiring sterilization of secondhand bedding was a culmination of a problem with bedbugs and other vermin created by secondhand mattresses and furniture in a particular city in Ohio. Another instance was also related involving scabies and mites in used bedding occurring recently in a nursing home. There was testimony that it is possible for lice and scabies to be transmitted from bedding material to humans and that these vermin can survive several weeks without a human host. The evidence indicates that bedbugs will attach their eggs in crevices and nooks and crannies of furniture and bedding. If not found on people, mattresses and other furniture are the most likely place where such vermin may be found. The state presented testimony to the effect that the chemicals used in disinfecting had a low residual life (one week). The defense also presented evidence that the cost of disinfecting mattresses would not be burdensome or exorbitant, some testimony indicating that the cost of chemicals could be as low as 67 cents per mattress. There was also evidence presented that the chemicals involved do not harm wood or the finish on antique furniture.

The trial court, as trier of the facts, accepted the evidence of defendants rather than that of plaintiffs on disputed points. This finding is supported by evidence and cannot properly be interfered with by this court on appeal.

The evidence arguably establishes a real and substantial relationship between the governmental purpose of promoting the public health, safety and welfare by regulating the spread of bedbugs and other vermin, and the means of achieving that purpose, namely, requiring secondhand furniture dealers to disinfect secondhand bedding and stuffed toys. The legislative determination to this effect is not clearly erroneous. The statutes arguably bear a reasonable relationship to the public health and welfare by tending to control the spread of bedbugs and other vermin. Whether there is a need for this legislation to protect the public health and welfare may be reasonably debatable. However, the courts will not interfere with a legislative determination where that determination is reasonably debatable. Accordingly, the trial court did not err in finding that the statutes and related rules do not violate plaintiffs' due process rights. The first assignment of error is not well taken.

By the second assignment of error, plaintiffs contend that the legislation is unduly oppressive upon plaintiffs, even assuming it to be within the legislative power to regulate used bedding and stuffed toys.

As indicated in the discussion of the first assignment of error, there was conflicting evidence as to the cost of disinfecting used mattresses and stuffed toys. Defendants presented evidence that the cost of the chemicals for such disinfecting could be as low as 67 cents per mattress. Plaintiffs, on the other hand, presented evidence to the effect that the cost will be substantial and would adversely affect the business of secondhand dealers. In support of their contention, plaintiffs rely upon *Direct Plumbing Supply Co.* v. *Dayton* (1941), 138 Ohio St. 540. In that case, the Supreme Court found a city ordinance invalid that required sellers of plumbing fixtures to affix stickers to all plumbing fixtures sold, setting forth the name "City of Dayton," a serial number, and the statement either "For Resale" or "For Installation." The ordinance also required all purchasers of plumbing fixtures to give their name, address, and place of proposed installation to the seller, and required the seller to make a weekly report to the city setting forth this information with respect to all sales.

The present statutes are readily distinguishable, both as to their purpose and effect. In *Direct Plumbing Supply Co.* v. *Dayton, supra,* at 547, the court pointed out that the city involved also required, through other ordinances not at issue in that case, permits for installing plumbing fixtures, and that they be installed only by licensed plumbers. Under these circumstances, the court found the additional requirements unduly burdensome as an unreasonable interference with rights of private property and freedom of contract. *Id.,* at 548-549.

The statutes here involved are readily distinguishable; they do not place such a heavy burden, and there exists no other statute requiring alternative means of accomplishing the same purpose. Rather, plaintiffs contend that the legislation could be drafted differently to make different provisions or requirements in order to accomplish the same purpose. Plaintiffs do point out that R. C. 3713.08 prohibits the sale of any article of bedding, or stuffed toys, that has been used by a person having an infectious or contagious disease. However, the purpose

of the legislation under consideration herein deals with the prevention of the spread of bedbugs and other vermin.

Plaintiffs contend that there exists a less obtrusive alternative to the instant legislation, and that the legislation places an extreme financial burden upon them. However, as noted previously, plaintiffs' evidence as to financial burden was contradicted by evidence presented by defendants. The trial court accepted the evidence presented by defendants, and found no undue financial burden to be involved. Accordingly, the second assignment of error is not well taken.

By the third assignment of error, plaintiffs contend that the statutes and rules are violative of the Privileges and Immunities Clause, as well as plaintiffs' rights to due process, equal protection of the laws, and freedom to contract. In this regard, plaintiffs contend there to be no rational basis for distinguishing between the sellers regularly engaging in the sale of secondhand articles of bedding and stuffed toys to whom the statutes and rules apply, and other classes of persons whose use of the articles allegedly present a "greater" risk to the public health.

The test to be applied in considering this equal protection argument of plaintiffs is well stated by Justice Locher in *Denicola* v. *Providence Hospital* (1979), 57 Ohio St. 2d 115, at 119, as follows:

"* * * Consequently, the statute must be upheld if there exists any conceivable set of facts under which the classification rationally furthered a legitimate legislative objective. *McGowan* v. *Maryland* (1961), 366 U. S. 420, 425-426. Stated differently, the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment. *Police Dept. of Chicago* v. *Mosley* (1972), 408 U. S. 92, 95."

R. C. 3713.051, by its terms, applies " * * * only to sellers who regularly engage in the sale, either at retail or wholesale, of secondhand articles of bedding or secondhand stuffed toys and does not apply to casual sales from the home of the owner directly to the purchaser."

Plaintiffs first contend that the classification is unreasonable because it does not apply to users of secondhand articles of bedding, such as hospitals, medical clinics, nursing homes, hotels, motels, *etc.* The wisdom of regulating sellers, but not

users, is a matter for legislative wisdom in the first instance. It is not necessary that the statute (R. C. 3713.051) regulate every conceivable circumstance which might give rise to a similar problem.

Here, the General Assembly has determined to regulate sellers engaged in the business of selling secondhand articles of bedding or stuffed toys. There is a clear distinction between casual sales and sales by dealers, both as to number and type of sales. There is also a distinction between users of the articles and sellers of them.

It is perfectly proper for the legislature to address a public health or safety problem in stages, and to regulate, first, that phase of the problem which the legislature deems the most acute. Even though it might be debatable as to whether some other phase of the problem should be regulated first, or regulated also, the selection of one phase of the problem to regulate does not *per se* constitute such invidious discrimination as to constitute a denial of the equal protection of the law. The legislature has determined that there is a risk to the public health and welfare from the spread of bedbugs and other vermin and has responded in a rational fashion to that risk by adopting legislation aimed at one problem, even though it may not solve or eliminate all the problems connected with the spread of bedbugs or other vermin. The classification appears reasonable under the circumstances.

Even assuming it to be debatable as to whether the legislature should have first addressed some other phase of the problem or should have addressed all phases at once, this is a matter of legislative determination in the first instance, and does not render the classification unreasonable or unconstitutional. The third assignment of error is not well taken.

By the fourth assignment of error, plaintiffs contend that the trial court erred in failing to find that the rules exceed the scope of the statutes and are themselves violative of due process.

Plaintiffs point out that Ohio Adm. Code 4101:6-1-22 requires sterilization not only of secondhand stuffed toys and secondhand bedding, but also of upholstered furniture.

This rule, however, must be read in light of the statutes involved. Although R. C. 3713.051 and 3713.09 refer only to

"bedding," as opposed to "upholstered furniture," R. C. 3713.01(B) defines "bedding" as follows:

" ' Bedding' means any upholstered furniture filled with material, any mattress, upholstered spring, comforter, bolster, pad, cushion, pillow, mattress protector, quilt, and any other upholstered article, to be used for sleeping, resting, or reclining purposes, and any glider, hammock, or other substantially similar article which is wholly or partly upholstered."

Since the word "bedding" by statutory definition includes "upholstered furniture," the rule is not inconsistent with R. C. 3713.051 and 3713.09, by separately referring to "upholstered furniture," which is defined by R. C. 3713.01(J) as follows:

" ' Upholstered furniture' means any article of furniture wholly or partly stuffed or filled with material and which is used or intended for use for sitting, resting, or reclining purposes."

There may be some question as to the scope of the rule, since R. C. 3713.01(B) refers to upholstered furniture used for "sleeping, resting, or reclining purposes," whereas R. C. 3713.01(J) includes upholstered furniture intended "for sitting, resting, or reclining purposes." However, the rule must be construed as being consistent with R. C. 3713.051 and 3713.09. It is unnecessary for purposes of this case to define the scope of R. C. 3713.051 and 3713.09, but only to note that the rule in question must be construed as being consistent therewith. Accordingly, the fourth assignment of error is not well taken.

For the foregoing reasons, all four assignments of error are not well taken, and the judgment of the Court of Common Pleas of Franklin County is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P. J., and McCORMAC, J., concur.