THE STATE OF OHIO, APPELLEE, *v.* TANNER, APPELLANT.

[Cite as State *v.* Tanner (1984), 15 Ohio St. 3d 1.]

(No. 84-443—Decided December 6, 1984.)

*Mr. Edmund M. Sawan,* for appellant.

*Mr. Harold K. Stubbs,* director of law, *Mr. Gary Rosen,* prosecuting attorney, and *Ms. Elaine E. Davidson,* for appellee.

*Mr. Randall M. Dana,* public defender, and *Mr. Gregory L. Ayers,* urging reversal for *amicus curiae,* Ohio Public Defender Commission.

LOCHER, J. Appellant attacks the constitutionality of R.C. 4511.19(A)(2) on three grounds. For the reasons set forth below we reject appellant's contentions and affirm the court of appeals in upholding the constitutionality of R.C. 4511.19(A)(2).

R.C. 4511.19 states in pertinent part that: "(A) No person shall operate any vehicle * * * within this state if * * * (2) The person has a concentration of ten-hundreths of one per cent or more by weight of alcohol in his blood." Before evaluating the averred constitutional infirmities of this language a preliminary consideration should be addressed.

We are obliged to give legislative enactments a presumption of validity. *State v. Dorso* (1983), 4 Ohio St. 3d 60, 60-61; *Benevolent Assn. v. Parma* (1980), 61 Ohio St. 2d 375, 375-377 [15 O.O.3d 450]; *State v. Renalist, Inc.* (1978), 56 Ohio St. 2d 276, 278 [10 O.O.3d 408]. The purpose behind this presumption goes to the very heart of inter-governmental comity and is a tangible demonstration of our recognition that the judiciary is a co-equal branch of government. See, *e.g., State, ex rel. Arbaugh, v. Richland Cty. Bd. of Commrs.* (1984), 14 Ohio St. 3d 5. Moreover, and in accord with our institutional obligations, statutes must be construed in conformity with the Ohio and United States Constitutions if at all possible. R.C. 1.47; see, also, *State v. Sinito* (1975), 43 Ohio St. 2d 98, 101 [70 O.O.2d 61].

We also note that numerous jurisdictions, from New York to California, have statutes similar to Ohio's driving while intoxicated statute.[1] None, to date, has declared this type of statute unconstitutional in the face of attacks similar to the one presented at bar.[2] We would affirm, however,

---

[1] Pursuant to Section 408(e)(1)(C), Title 23, U.S. Code, a state is eligible for a basic grant of federal funds if the state law provides "that any person with a blood alcohol concentration of 0.10 percent or greater when driving a motor vehicle shall be deemed to be driving while intoxicated." Spurred by the incentive of federal funds (or the disincentive of losing such funds) most states and the District of Columbia have amended their statutes to comport with federal dictates. See *Burg v. Municipal Ct.* (1983), 35 Cal. 3d 257, 198 Cal. Rptr. 145, 148-149, 673 P. 2d 732, 736, at fns. 4, 5, and 6. See, also, Katz & Sweeney, Ohio's New Drunk Driving Law: A Halfhearted Experiment in Deterrence (1983-1984), 34 Case W. Res. L. Rev. 239, 241 at fn. 13.

[2] See, *e.g., Van Brunt v. State* (Alaska App. 1982), 646 P. 2d 872; *Fuenning v. Superior Court* (1983), 139 Ariz. 590, 680 P. 2d 121; *Burg v. Municipal Ct.* (1983), 35 Cal. 3d 257, 198 Cal. Rptr. 145, 673 P. 2d 732; *Coxe v. State* (Del. 1971), 281 A. 2d 606; *Roberts v. State* (Fla. 1976), 329 So. 2d 296; *People v. Ziltz* (1983), 98 Ill. 2d 38, 455 N.E. 2d 70; *State v. Hansen* (Iowa 1972), 203 N.W. 2d 216; *People v. Schmidt* (N.Y. City Crim. Ct. 1984), 478 N.Y. Supp. 2d 482; *State v. Basinger* (1976), 30 N.C. App. 45, 226 S.E. 2d 216; *Commonwealth v. Mikulan* (Pa. 1983), 470 A. 2d 1339; *Greaves v. State* (Utah 1974), 528 P. 2d 805; *State v. Franco* (1982), 96 Wash. 2d 816, 639 P. 2d 1320; *State v. Ball* (W. Va. 1980), 264 S.E. 2d 844; *State v. Muehlenberg* (App. 1984), 118 Wis. 2d 502, 347 N.W. 2d 914.

that this weight of authority, although persuasive, is not dispositive. Accordingly we will proceed to address each of appellant's concerns with particularity.

## I
## Unconstitutional Vagueness

Under the Due Process Clauses of the Fourteenth and Fifth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution, any statute which " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute' " is void for vagueness. *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156, 162. More recently, the United States Supreme Court has stated that "* * * the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender* v. *Lawson* (1983), 461 U.S. 352, 357. Similarly, this court has stated that " '* * * [t]he crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue.' " *Columbus* v. *Thompson* (1971), 25 Ohio St. 2d 26, 30 [54 O.O.2d 162], quoting *United States* v. *Capital Traction Co.* (1910), 34 D.C. App. 592, and citing *Connally* v. *General Construction Co.* (1926), 269 U.S. 385.

Three "values" rationales are advanced to support the "void for vagueness" doctrine. See *Grayned* v. *City of Rockford* (1972), 408 U.S. 104, 108-109; see, also, Gifford & Friedman, A Constitutional Analysis of Ohio's New Drunk Driving Law (1983), 15 U. Tol. L. Rev. 133, 136-144. (This article concludes, as we do here, that the statute is constitutional.) These values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited. Proper constitutional analysis necessitates a review of each of these rationales with respect to the challenged statutory language.

Under this tripartite analysis the first rationale is easily resolved. We cite with approval language by the Utah Supreme Court that was also utilized to rebut a similar allegation of constitutional infirmity:

"* * * We can see no reason why a person of ordinary intelligence would have any difficulty in understanding that if he has drunk anything containing alcohol, and particularly any substantial amount thereof, he should not attempt to drive or take control of a motor vehicle." *Greaves* v. *State* (Utah 1974), 528 P.2d 805, 808; see, also, *Roberts* v. *State* (Fla. 1976), 329 So.2d 296, 297 (same language used to uphold the Florida statute).

Information to the public is readily available[3] indicating the correlation between alcohol consumption, time, and body weight if one desires to drink and hazard the consequences of driving. See *State* v. *Franco* (1982), 96 Wash.2d 816, 825, 639 P.2d 1320, 1324. A person of ordinary intelligence should have no difficulty recognizing that abstinence or moderation is a simple means of ensuring compliance with the statute.

No secret has been made of the fact that drinking and driving do not mix. The statute does not limit drinking. Nor does it limit driving. It does, however, limit driving after excessive drinking.[4]

The second rationale is also easily resolved. The statute stipulates a maximum blood alcohol level of .10 percent. This precise level leaves no discretion in the physical application of the statute. While we are mindful that inconsistent enforcement by officials is always possible (see, *e.g.,* Katz & Sweeney, Ohio's New Drunk Driving Law: A Halfhearted Experiment in Deterrence [1983-1984], 34 Case W. Res. L. Rev. 239); the statute on its face delineates the scope of application. Discriminatory and arbitrary enforcement are thereby discouraged by stipulating a specific blood alcohol level. See *Kolender, supra.* Moreover, appellant has not alleged, nor has any evidence been adduced, to indicate that R.C. 4511.19 has been applied in a discriminatory manner.

---

[3]

## NUMBER OF DRINKS TO REACH
## APPROXIMATE BLOOD ALCOHOL CONTENT (BAC)

| DRINKS | | BODY WEIGHT IN POUNDS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 100 | 120 | 140 | 160 | 180 | 200 | 220 | 240 | |
| One drink | 1 | .04 | .03 | .03 | .02 | .02 | .02 | .02 | .02 | **REASONABLE** |
| = 1 oz. of | 2 | .08 | .06 | .05 | .05 | .04 | .04 | .03 | .03 | |
| 100 proof | 3 | .11 | .09 | .08 | .07 | .06 | .06 | .05 | .05 | |
| liquor, 4 oz. | 4 | .15 | .12 | .11 | .09 | .08 | .08 | .07 | .06 | |
| of table | 5 | .19 | .16 | .13 | .12 | .11 | .09 | .09 | .08 | **UNSAFE** |
| wine or 12 | 6 | .23 | .19 | .16 | .14 | .13 | .11 | .10 | .09 | |
| oz. of beer. | 7 | .26 | .22 | .19 | .16 | .15 | .13 | .12 | .11 | |
| | 8 | .30 | .25 | .21 | .19 | .17 | .15 | .14 | .13 | **ILLEGAL** |
| | 9 | .34 | .28 | .24 | .21 | .19 | .17 | .15 | .14 | |
| | 10 | .38 | .31 | .27 | .23 | .21 | .19 | .17 | .16 | |

**Subtract .01% for each hour of drinking after first hour**
**In Ohio, you are legally 'under the influence' at a BAC of .10% or higher**

Funded By: National Highway Traffic Safety Administration, U.S. DOT

Published By: THE OHIO DEPARTMENT OF HIGHWAY SAFETY

[4] "The strict liability nature of this offense bears directly on the defendant's argument that this section of the statute is vague since a person cannot determine when his * * * [blood alcohol] exceeds .10%. It simply does not matter since the liability is absolute. Just as one may not argue that a stop sign which was violated was not seen by or known to the violator, so may not a person whose * * * [blood alcohol] registers .10% or above on an appropriately calibrated breathalyzer argue that he did not know it was so." *People* v. *Káppas* (1983), 120 Ill. App. 3d 123, 76 Ill. Dec. 1, 458 N.E. 2d 140, 145.

The third and final rationale is also easily resolved with the observation that drunk driving has never been considered a fundamental constitutional right[5] under the state or federal Constitutions.

## II
### Unconstitutional Overbroadness

Appellant argues that R.C. 4511.19(A)(2) is unconstitutional because it is an overbroad incursion into the fundamental right to travel without unreasonable governmental hindrance. *United States* v. *Davis* (C.A. 9, 1973), 482 F.2d 893; *Allison* v. *Akron* (1974), 45 Ohio App. 2d 227 [74 O.O.2d 343]. Although we have dealt with this concern, in part, by our previous observation that there is no fundamental constitutional right to drive while drunk, some additional observations are in order.

Driving is not a right but a privilege well within the purview of a state's police powers. *State* v. *Starnes* (1970), 21 Ohio St. 2d 38, 45 [50 O.O.2d 84]; *Breithaupt* v. *Abram* (1957), 352 U.S. 432, 439. We find that there is a substantial state interest in reducing the carnage wrought by drunk drivers. *Commonwealth* v. *Mikulan* (Pa. 1983), 470 A.2d 1339, 1341. The reduction or elimination of drunk drivers clearly promotes the health, safety and welfare of the citizenry of Ohio. See *Cincinnati* v. *Kelley* (1976), 47 Ohio St. 2d 94, 97 [ 1 O.O.3d 56]; *Dragelevich* v. *Youngstown* (1964), 176 Ohio St. 23, 30 [26 O.O.2d 298]. Such an objective, however, while a substantial state interest, is only one part of the two-step inquiry into the exercise of state police powers.

The second part of our inquiry requires us to ask whether the evil the ordinance is intended to obviate is rationally related to the methods specified by the ordinance. *Hilton* v. *Toledo* (1980), 62 Ohio St. 2d 394 [16 O.O.3d 430]; *Columbus Auction House, Inc.* v. *State* (1980), 69 Ohio App. 2d 1 [23 O.O.3d 9]. As we have previously observed (see fn. 2, *supra*) numerous states have adopted the .10 percent blood alcohol standard after substantial legislative inquiry. Similarly, our own statute was enacted subsequent to the exhaustive findings of a thirty-seven member committee appointed to study the effects of alcohol-impaired driving in Ohio. O'Brien, Driving Under the Influence of Alcohol in Ohio After Senate Bill 432 — The Prosecutor's Viewpoint (1983), 15 U. Tol. L. Rev. 171, 174; Bender, Ohio's New Alcohol Impaired Driving Law — A Judicial Perspective (1983), 15 U. Tol. L. Rev. 117, 120-122. After study, the statute was given full legislative review before it was finally signed into law. It is precisely this type of policy determination, based upon the collective efforts of the executive and legislative branches with substantial input by experts on

---

[5] It should be noted that many consider the void for vagueness doctrine and the overbreadth doctrine to be indistinguishable. See, *e.g.,* Note, The Void for Vagueness Doctrine in the Supreme Court (1960), 109 U. Pa. L. Rev. 67, 110-113. Accordingly, we incorporate our discussion of the overbreadth aspects of the statute (Part II herein) into the present discussion.

alcoholism, highway safety experts, members of the criminal justice system, and members of the public, that helps to give this legislation the presumption of reasonableness. Moreover, this presumption was never contradicted by appellant who did not offer any evidence to rebut the policy validity of the .10 percent blood alcohol level.[6] Accordingly, we find such a level to be reasonably related to lawful legislative ends. Appellant's assertions to the contrary are without merit.

### III
### Unconstitutional Irrebuttable Presumption

Appellant claims that the maximum blood alcohol level of .10 percent creates a constitutionally defective conclusive presumption of guilt. See *Sandstrom* v. *Montana* (1979), 442 U.S. 510, 522. This argument is unconvincing. Rather than setting an irrebuttable presumption, Ohio's driving while intoxicated statute defines the point the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others. The defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels. The jury may consider those specific test results, and all other relevant evidence, in ascertaining whether the state has shown beyond a reasonable doubt that the defendant has violated the statute. There is thus no presumption of guilt. See *State* v. *Vega* (1984), 12 Ohio St. 3d 185, 189; *Fuenning* v. *Superior Court* (1983), 139 Ariz. 590, 680 P. 2d 121; *State* v. *Murphy* (1983), 7 Ohio Misc. 2d 1 (in contrast to other jurisdictions, Ohio's driving while intoxicated statute is less dependent on chemical testing). Once again appellant's allegations lack merit.

### IV
### Conclusion

R.C. 4511.19(A)(2) represents a constitutionally valid means for dealing with a problem of epidemic proportions.[7] Drunk drivers represent a danger not only to themselves but to every citizen of this state. To aver, as appellant has done here, that an individual has some fundamental right to operate a dangerous instrumentality under the influence of a perception altering substance is an untenable proposition that we are compelled to reject.

We therefore hold that R.C. 4511.19(A)(2) is constitutional; it is not

---

[6] For a substantial listing of the support affirming the validity of the scientific measurement of blood alcohol levels, see *Burg* v. *Municipal Ct., supra,* fn. 4 at 148.

[7] According to 1980 statistics by the National Safety Council, approximately half of all auto fatalities are caused by drunk drivers. More Americans have been killed by drunk drivers than by any other kind of accident.

void for vagueness, not overbroad, and does not create an unconstitutional irrebuttable presumption.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.