THE STATE OF OHIO, APPELLANT, *v.* LONGHORN WORLD CHAMPIONSHIP RODEO, INC., APPELLEE.

(No. C-840572—Decided June 12, 1985.)

*Richard A. Castellini,* city solicitor, *Paul J. Gorman* and *Frank H. Prouty, Jr.,* for appellant.

*Arthur Weber, Jr.,* for appellee.

SHANNON, P.J. Since October 8, 1965, it has been unlawful in Ohio under R.C. 959.20 to use certain devices to stimulate the performance of work animals that appear in public exhibitions such as circuses and rodeos.[1] The question put before us in this appeal is whether the statute should be construed

---

[1] R.C. 959.20 applies not only to animals performing in circuses and rodeos, but to all work animals used for work purposes. It reads, in full, as follows:

"As used in this section:

"(A) 'Work animal' includes a horse, pony, mule, donkey, mare, ox, bull, gelding, or other animal used or intended to be used for a work purpose.

"(B) 'Work purpose' means the performance by a work animal of some work or labor, including showing, performing, or being used in any exhibition, show, circus, rodeo, or similar use.

"(C) 'Owner' includes any person, firm, association, or corporation owning, or having a proprietary interest in or possession, custody, or charge of a work animal.

as an unconstitutional exercise of legislative power insofar as it specifically prohibits the use of one device that has come to be known either as a flank strap or as a bucking strap.

As far as this record demonstrates, the only place where a bucking strap is put to routine use is in certain competitive events of rodeos staged for public viewing. The strap, which is generally made of leather and sometimes padded with a woolen lining, is placed around the flank regions of a horse or bull behind the rib cage and just forward of the hindlegs. When tightened immediately before the animal is scheduled to perform, it produces the result desired by the exhibitor, a pronounced and repeated bucking of the hindlegs that is intended to test a rider's ability to remain in a mounted position for a period that lasts no longer than eight seconds. As soon as the ride is over, the strap is loosened and the bucking action quickly comes to a halt.

The defendant-appellee, a corporation operating under the name Longhorn World Championship Rodeo ("Longhorn"), is one of the largest producers of indoor professional rodeo acts in the United States. With a staff of full-time and seasonal employees that include animal handlers, clerical assistants and promotional personnel, it moves from city to city staging performances in arenas that range from indoor stadiums to civic centers. On February 25, 1984, while Longhorn was in Cincinnati putting on shows at the Riverfront Coliseum, it was named in its corporate status as the defendant in a complaint signed by Norbert Mahlman, who was then an officer for the Hamilton County Society for the Prevention of Cruelty to Animals. According to the allegations in the complaint, the corporation had violated R.C. 959.20 by permitting "a flank strap or bucking strap to be placed on several horses and bulls engaged in [a] rodeo performance."

After entering a plea of not guilty to what was a misdemeanor charge under Ohio law involving a potential penalty of not more than $5,000 in fines and/or six months' imprisonment, R.C. 959.99(F), 2929.21 and 2929.31(A)(7),[2] Longhorn moved for a dismissal of the complaint on the ground that R.C. 959.20 was "an indefinite and invalid exercise of the police power in violation of the Fourteenth Amendment of the Constitution of the United States and the State of Ohio." Conceding only that the state had a legitimate interest in preventing the cruel and abusive treatment of animals, it argued that the statutory prohibition of bucking straps was infirm in a constitutional sense because it bore no real and substantial relationship to the furtherance of that interest.

Longhorn was given the opportunity to prove its point at an evidentiary hearing held before a judge of the municipal court on May 31, 1984. In the course of that hearing, the parties produced sworn statements and testimony from the complainant Mahlman and the prin-

---

"No person shall directly or indirectly or by aiding, abetting, or permitting the doing thereof, put, place, fasten, use, or fix upon or to any work animal used or readied for use for a work purpose, twisted wire snaffles, bucking straps, flank straps, electric or other prods, or similar devices.

"The commission or performance of any act prohibited by this section is the act of the owner of the work animal upon or to which such act was done."

[2] The offense is classified as a misdemeanor of the first degree under R.C. 959.99(F). Although one charged as an individual is subject to a maximum fine of only $1,000, R.C. 2929.21(C)(1), the $5,000 limit becomes applicable when the defendant is an organization such as a corporation, R.C. 2929.31(A)(7).

cipal owner of Longhorn, Bruce Lehrke, as well as from two representatives of humane societies and no less than five licensed doctors of veterinary medicine. One of the veterinarians appearing on behalf of Longhorn was the chairman of the equine section and the equine research group at the veterinary school of the Ohio State University, who had, we note, earlier given testimony at a committee hearing in the General Assembly urging the repeal of that portion of R.C. 959.20 prohibiting the use of bucking straps.

After taking notice of the substantial burden to be overcome before a legislative enactment may be set aside on constitutional grounds, the judge presiding in the court below found from the evidence that R.C. 959.20 did not pass the test of judicial review only insofar as it related to bucking straps. In the decision that accompanied the final order dismissing the complaint against Longhorn, she expressed the rationale for her conclusion in these terms:

"There is no doubt that the State has a legitimate interest in protecting animals from harm and in protecting the property rights of animal owners, but this statute singles out at least one device that appears to do no objective harm to the animal, while not prohibiting other devices. The entire issue of preventing cruelty to animals is more appropriately addressed in O.R.C. 959.13, and any abuses can be prosecuted under that section."

The findings of fact to justify this result were set forth separately as follows:

"Numerous witnesses and affiants testified that they had never seen an injury attributable to the flank strap. A witness for the City testified she had seen sores on an animal, but would not say these were different from any sores from a saddle or other ordinary equipment commonly used. The other evidence of possible harm to the animal was the recognition of the pressure caused by the snug application over the abdominal area of the horse [or bull]. On this last point, no objective evidence was introduced to prove damages *ever* had occurred to an animal after use of the flank strap from extreme pressure. To the contrary, testimony showed that extreme pressure will cause the animal to 'freeze' and simply stand still or possibly fall to the ground."

As part of its efforts to defend the trial judge's assessment of the constitutionality of R.C. 959.20, Longhorn now argues in response to the state's appeal that we, as a reviewing court, should pay great deference to the ruling below due to the judge's unique "opportunity to observe the witnesses, hear the testimony, and review the documentary evidence." In the corporation's estimation, the appropriate standard to govern our review is the one articulated in the syllabus of *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], and referred to recently by one of the dissenters in *Thirty-Four Corp.* v. *Sixty-Seven Corp.* (1984), 15 Ohio St. 3d 350, 355.[3] If the standard is applied in this case, it is reasoned, we would have to leave the judgment before us undisturbed because there is sufficient and reliable evidence in the record to provide the necessary support for it.

The evidence upon which Longhorn relies to sustain its argument is best summarized in the conclusions given by the witnesses testifying on its behalf in the court below. According to at least two of those witnesses, the action produced by a bucking strap is a natural one

---

[3] The standard prevents a reversal, for reasons concerning weight of the evidence, of any judgment "supported by some competent, credible evidence going to all the essential elements of the case."

that is in no way indicative of an expression of pain by the animal to which it is applied. Viewed in this light, the strap is nothing more than a painless stimulus for a conditioned reflex or a cue interpreted by the animal as a command to start its work. Although the tightening of the strap may cause some momentary irritation or discomfort, it is insignificant in degree and may be likened to something no more serious than a form of tickling sensation or the human experience of wearing a belt.

If we adhere to the standard urged by Longhorn, which is, we note, the accepted basis for reviewing judgments rendered on the merits in such traditional civil actions as those predicated upon tort or contract law, it must, without question, be said that the foregoing evidence provides a tenable basis for a conclusion that the statutory prohibition of bucking straps does not legitimately serve the state's recognized interest in preventing instances of cruelty, abuse or mistreatment in the realm of work animals. For the following reasons, however, we hold that the standard cannot be applied here.

For purposes of appellate review, we are convinced that a ruling on the constitutionality of a statute is analytically distinct from a ruling on the merits of the evidence adduced in support of a conventional civil claim. In a case such as this, if there is deference to be paid, it is owed in the first instance not to the trial court, but to the legislature. One of the fundamental rules underlying the doctrine of separation of powers in constitutional jurisprudence is that any act of a legislative body is entitled to a strong presumption of constitutionality. *State v. Renalist, Inc.* (1978), 56 Ohio St. 2d 276 [10 O.O.3d 408]; *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159 [38 O.O.2d 404]; *Hartinger* v. *Cincinnati* (Dec. 24, 1980), Hamilton App. No. C-790759, unreported. Although the

presumption is not unrebuttable, it may be overcome in the case of a statute enacted in the exercise of the general police power only with a showing by clear and convincing evidence that the enactment bears no real and substantial relationship to a legitimate state interest properly subject to regulatory action. *Cincinnati* v. *Welty* (1980), 64 Ohio St. 2d 28, 29 [18 O.O.3d 211]; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142 [57 O.O. 134]. It is not enough to show that a statute has, or could possibly have, an unfortunate application in a given case, nor is it sufficient to demonstrate that the findings and conclusions of the court originally deciding the matter are supported by some evidence in the record. *Id.* See, also, *South Carolina State Highway Dept.* v. *Barnwell Bros., Inc.* (1938), 303 U.S. 177.

Where, as here, the statute in question is an exercise of the police power that does not impinge upon any fundamental right, the challenge must fail unless it can be said from the record as a whole that the initial legislative determination to act in furtherance of the public health, safety and welfare appears to have been clearly erroneous. *Ohio Edison Co.* v. *Power Siting Comm.* (1978), 56 Ohio St. 2d 212 [10 O.O.3d 371]; *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103 [4 O.O. 2d 113], paragraph six of the syllabus; *Columbus Auction House, Inc.* v. *State* (1980), 69 Ohio App. 2d 1 [23 O.O.3d 9]. In other words, the appropriate standard of review is whether the entire record creates the definite and firm conviction that the legislature committed a mistake when it enacted the statute despite the existence of some evidence to support its judgment. See *Bose Corp.* v. *Consumers Union of U.S.* (1984), 80 L.Ed. 2d 502, 516; *United States* v. *United States Gypsum Co.* (1948), 333 U.S. 364, 395.

In the case *sub judice,* it cannot be gainsaid that Ohio has a legitimate in-

terest in protecting work animals from cruelty, abuse or any other form of mistreatment, and that R.C. 959.20 is a reflection of one attempt by the General Assembly to further this interest. To determine whether the legislative judgment can be deemed clearly erroneous, it is clear that we cannot look solely to the evidence adduced by Longhorn in the court below to support its position. Rather, our inquiry can only reach an effective conclusion once we have examined all the evidence in the record that may be said to bear upon the justification for the decision to create a blanket prohibition against the use of bucking straps.

In this respect, we note that there is evidence that may be construed in a manner favorable to the constitutionality of the statute. According to expert testimony presented by the prosecution, a bucking strap is applied to one of the most sensitive areas of an animal's body where there are no bony structures to provide protection for the internal organs. The bucking produced by the tightening of the strap is, from this standpoint, viewed as an act of self-defense, by virtue of which the animal attempts to remove a foreign object that causes unnatural pressure and pain, and that may result in pressure sores and internal injuries.

Although those who testified for Longhorn in the court below insisted that the corporation's own use of the strap was completely safe, they did concede that there existed a potential for harm or abuse. Not only was it acknowledged that the significance of an animal's bucking was to be construed as an attempt to get the strap off, but it was also said that an animal could become debilitated, collapse, or fall over backwards if the tightening of the strap resulted in an undue amount of pressure.

Given the divergence of the viewpoints expressed in the record and the evidence that, if nothing else, demonstrates rather plainly some potential for abuse in the application of a bucking strap, we are not firmly persuaded, in the final analysis, that the General Assembly committed a mistake when it chose to include the device within the blanket prohibition created by R.C. 959.20. Although there does not appear to be a particularly compelling need for preventive legislation in all cases involving the use of the strap, neither does it appear certain to us that the prohibition does not reasonably serve a legitimate governmental interest. The enactment we are called upon to review is, for this reason, difficult to measure, but insofar as it reflects a balance struck by the General Assembly after weighing the competing interests, we are not prepared to second-guess it. Because Longhorn has failed in its burden to demonstrate by clear and convincing evidence that the statute lacks a real and substantial relationship to the state's interest in protecting work animals, we must conclude that the trial judge incorrectly struck down R.C. 959.20 on constitutional grounds. The assignment of error given to us by the prosecuting attorney is, accordingly, well-taken.

In reaching our decision today, we are, it should be noted, ruling only upon the constitutionality of a statute that forms the basis for a criminal charge; we are not determining the guilt or innocence of the party charged. Nor do we intend by the result here to brand Longhorn as an organization that engages routinely in the exploitation and abuse of animals. Outside of its alleged use of one device prohibited by law in Ohio, but apparently not in any other state, there is nothing in the record that can be said to besmirch its reputation as a well-qualified producer of professional rodeo events. Its animals are fed well, not overworked and pastured for much of the year when they are not performing. It is further clear

that the corporation has worked actively with humane societies in an effort to promulgate industry standards to provide for the proper care and treatment of the animals. If, however, there is a real justification to be found in the interest of public entertainment for allowing an exception to the statutory prohibition of bucking straps for a professionally run operation such as Longhorn, that choice must be made by the legislature.

The judgment of the municipal court is hereby reversed, and this cause is remanded to that court for further proceedings in accordance with law pursuant to the complaint charging the defendant-appellee with a violation of R.C. 959.20.

*Judgment reversed and cause remanded.*

DOAN and HILDEBRANDT, JJ., concur.