OPINION
Defendant-appellant Anthony Brletich appeals his conviction of driving under the influence which was entered after a jury trial in the Eastern Area Columbiana County Court. For the following reasons, appellant's conviction is affirmed.
 STATEMENT OF FACTS
On May 6, 1998 shortly before 8:00 p.m., a Columbiana County Sheriff's Deputy responded to a call regarding a vehicle parked in the roadway with a motorist slumped inside. Upon arriving at the scene, the officer saw that appellant's head was resting on the steering wheel. Appellant's car was running and his window was down. As the officer peered at appellant, he smelled a strong odor of alcohol and noticed a beer bottle between appellant's legs. The officer reached into the car, turned off the engine and removed the keys from the ignition. He then woke appellant.
Appellant told the officer that he stopped at this particular place after work because of the scenery. The officer observed that appellant's speech was slurred and slow. The officer noticed five beer bottles on the passenger side floor, which were apparently unopened. He then asked appellant to exit the vehicle. Appellant was unsteady on his feet and inquired whether the officer had better things to do with his time.
According to the officer, appellant failed the three field sobriety tests which were administered. During the heel-to-toe test, appellant staggered, used his arms for balance and failed to touch his heel to his toe. While reciting the alphabet, appellant omitted the letters Q and Y. Upon touching his finger to his nose, he used the wrong hand twice. Appellant was arrested, and his car was impounded.
The officer administered a breath test at 9:14 p.m., at which time appellant's blood alcohol content registered .137. Appellant was cited for driving under the influence and driving with a prohibited blood alcohol content. After being released, appellant went to Salem Community Hospital to have his blood tested. At 11:35 p.m., appellant's blood alcohol content registered .094.
Appellant waived his speedy trial rights. He then filed a motion to suppress on the grounds that the officer did not permit him to timely obtain blood tests. This motion was overruled. Appellant then obtained new counsel who sought two continuances. On December 9, 1998, five days before trial, appellant filed a motion to suppress, contending that the officer lacked probable cause to arrest since he technically arrested appellant when he removed his keys from the ignition. The court overruled this motion, stating the it was not timely filed.
The case was tried to a jury on December 14, 1998, and the jury returned guilty verdicts. The charges of driving under the influence and driving with a prohibited blood alcohol content were merged into one offense. Appellant was then sentenced to ninety days in jail and fined $750. Appellant immediately filed one motion seeking a new trial, mistrial, acquittal or post-conviction relief. The trial court denied this motion. The within timely appeal followed.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant sets forth four assignments of error, the first of which alleges:
 "THE LOWER COURT ERRED BY NOT SUPPRESSING ALL OF EVIDENCE AND INFORMATION OBTAINED BY THE STATE WHEN THE DEPUTY TOOK THE KEYS TO THE DEFENDANT'S CAR, THEREBY ARRESTING THE DEFENDANT WITHOUT PROBABLE CAUSE."
According to the officer's incident report, he turned the engine off and removed the keys from the ignition prior to waking appellant. Appellant urges this court to hold that the removal of the keys constituted an arrest and that this arrest was done prior to the development of probable cause. Appellant relies on the case of State v. Finch (1985), 24 Ohio App.3d 38.
Firstly, the trial court overruled this issue on the grounds that it was presented in an untimely motion to suppress under Traf.R. 11 (C). Pursuant to this rule, all pretrial motions shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. Appellant was arraigned on May 7, 1998. He filed the relevant motion to suppress on December 9, 1998. The trial date was December 14, 1998. As such, the trial court properly refused to address the untimely filed suppression motion.
Furthermore, the argument that appellant was arrested without probable cause when his keys were taken is without merit. In order to seize a person under Terry, probable cause is unnecessary.Terry v. Ohio (1968), 392 U.S. 1. An investigatory detention is permissible upon reasonable suspicion. This entails an inquiry into whether specific and articulable facts and reasonable inferences drawn therefrom would lead a reasonable person to conclude that the detained person is engaged in criminal activity. It is clear that reasonable suspicion for an investigatory stop existed in the case at bar.
Appellant's car was parked in the roadway. The car was running and appellant was asleep or passed out with his head on the steering wheel and his arms at his sides. A bottle of beer was visible between his legs. The window was open and a strong odor of alcohol was emanating from the vehicle. Five bottles of beer were on the passenger side floor. The officer turned the ignition off, and appellant still did not awake. This is reasonable suspicion to detain appellant for brief questioning. See State v. Szewczyk (Sept. 14, 1999), Mahoning App. No. 98 CA 20, unreported, 2-3 (noting that reasonable suspicion is not even necessary to approach someone slumped on the steering wheel to ascertain whether they are in need of assistance). See, also,State v. Neu (Mar. 3, 2000), Hamilton App. No. C-990552, unreported, 2.
Appellant relies on Finch where the Twelfth Appellate District held that an officer's removal of keys from the ignition of a car whose driver merely appeared and smelled drunk constitutes a premature arrest without probable cause. Finch,
supra at 39-40. The case at bar is distinguishable from Finch.
It must be noted that no testimony was presented on the officer's removal of the keys from the car. The incident report stated that the vehicle was running with the keys in the ignition and that the officer "removed the keys" prior to waking appellant. It is unknown whether this means he removed the keys from the ignition and placed them somewhere, such as on the dashboard or passenger seat, or whether he removed the keys from the ignition and kept them. The officer was not questioned on this ambiguity. Additionally, there is no indication that appellant knew that the officer removed the keys from the ignition since appellant was still sleeping while this was being done; he did not testify that he knew his keys had been removed. We also note that there was more than probable cause to believe that appellant had violated R.C. 4301.62, Ohio's "open container" law. Moreover, in Finch,
field tests were never conducted.
Notwithstanding the distinguishing characteristics of the cases, we disagree with appellant's assertion that the removal of the keys constituted an arrest. See State v. Smith (1994),96 Ohio App.3d 130, 132 (explaining how the language in Finch is misinterpreted and holding that taking the keys from a person found sleeping in his car prior to administering field sobriety tests is not an arrest). We hold that the better view, at least in this case, is that any removal of the keys from the car constituted a detention, i.e. an investigatory Terry stop. SeeCity of Toledo v. Lidell (Sept. 30, 1999), Lucas App. No. L-98-1426, unreported, 1-2 (stating that investigatory stop began when officer reached into open window of car of sleeping person and removed keys from ignition). Because reasonable suspicion existed, the detention was lawful under Terry. During the brief detention, probable cause developed. For instance, appellant's speech was slow and slurred, and he was unsteady on his feet. He admitted to drinking three beers, two at a bar. According to the officer, appellant then failed three field sobriety tests. We need not proceed any further as appellant does not contest that probable cause developed. Accordingly, appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error contends:
 "THE TRIAL COURT ERRED, IN VIOLATION OF THE DEFENDANT'S RIGHT TO A FAIR TRIAL, IN NOT ALLOWING THE DEFENDANT TO PRESENT EVIDENCE REGARDING JUROR MISCONDUCT, AND/OR IN NOT GRANTING THE DEFENDANT'S MOTION FOR NEW TRIAL WHEN ONE OF THE JURORS FELL ASLEEP TWICE DURING THE PRESENTATION OF TESTIMONY."
Appellant posits that he was denied a fair trial because a juror fell asleep twice during the trial. Appellant points to pages 165 and 231 of the trial transcript as proof that a juror was sleeping. However, as the state points out, there is absolutely nothing in the record, particularly on the cited pages, that establishes a sleeping juror or any objection thereto. At page 165, the court called a mid-afternoon break in the middle of the officer's testimony on redirect. At page 231, an afternoon recess was held, and an on the record discussion was had outside of the presence of the jury on an evidentiary issue. At neither break did appellant mention that a juror was sleeping or seek a mistrial at those junctures. Failure to raise the issue on the record before the trial court is fatally dispositive of this assertion raised for the first time at the appellate court level. See State v. Slagle (1992), 65 Ohio St.3d 597, 604.
In his response brief, appellant argues that even though the record is silent on this issue, he preserved the error by filing a post-trial motion. Nonetheless, any allegation of a sleeping juror was waived when appellant failed to object at the time of the alleged incidents. See State v. Duling (1970), 21 Ohio St.2d 13,17 (stating that constitutional issues cannot be considered in postconviction proceedings under R.C. 2953.21 where they were not but could have been fully litigated at trial). See, also, Statev. Perry (1967), 10 Ohio St.2d 175. One cannot sit on his rights, hope for a favorable jury verdict and after receiving an unfavorable verdict, finally assert an issue which was easily remedied at the time of its inception. See State v. Sapp (Aug. 15, 1995), Franklin App. No. 94APA10-1524, unreported, 7-8 (holding that the defendant must call the issue of a sleeping juror to the court's attention at a time when the court can act on the issue), citing State v. Williams (1977), 51 Ohio St.2d 112.
Had appellant objected on the record during the breaks, the court could have voir dired the juror alleged to have been sleeping to ascertain what, if any, testimony was missed. The defense would not have been prejudiced by such a procedure as the juror would remain unaware of which side was protesting her sleeping. Had a timely objection been made, the court could have attempted to remedy the problem in various ways. For instance, certain testimony could have been repeated. The court could have replaced the sleeping juror with the alternate. See State v. Heard
(June 11, 1987), Cuyahoga App. No. 52303, unreported, 4 (stating that even a defendant who brings the issue of a sleeping juror to the court's attention during trial waives any error if he fails to request that the juror be replaced by the alternate). Moreover, the court could have declared a mistrial before the whole case was tried and a guilty verdict was rendered.
We would also note the overwhelming evidence of appellant's guilt, which will be discussed further infra. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error provides:
 "THE TRIAL COURT ERRED IN NOT ADMITTING `DEFENSE EXHIBIT E', A CHART WHICH THE SUPREME COURT TOOK JUDICIAL NOTICE OF IN STATE V. TANNER, 15 OHIO ST.3d 1 (1984), INTO EVIDENCE."
Appellant sought to have a chart admitted into evidence which was published in 1984 by the Ohio Department of Highway Safety. This chart apparently demonstrated the correlation between a person's weight, time between drinks and blood alcohol content. Appellant testified that he only drank three beers and that according to the chart, he would not be legally intoxicated after drinking only three beers. The state objected to the presentation of the chart. Appellant responded that the court should admit that chart since the Supreme Court mentioned this chart in a footnote in the case of State v. Tanner (1984), 15 Ohio St.3d 1,4, fn.3 (where the defendant argued that the driving under the influence statute was vague, and the Court held that it is not vague because there is information available to the public indicating the correlation between alcohol consumption, time and body weight). Appellant also argued that the chart was public record and had been properly authenticated.
The trial court stated that appellant did not view this exact chart prior to the incident. The court also stated there is no evidence that the chart is still available to the public or represents the current state of scientific knowledge. Appellant contends in multiple ways that the court erred in excluding the chart from evidence.
First, we note that the chart's relevance under Evid.R. 401 is questionable since the information contained in the chart is not "of consequence to the determination" of whether appellant operated his vehicle while impaired by alcohol. Regardless, an error in the admission or exclusion of evidence is not reversible unless it is an abuse of discretion that is prejudicial to the defendant. Davis v. Immediate Med. Serv., Inc. (1997), 80 Ohio St.3d 10,26. We fail to see and appellant fails to explain how the exclusion of the chart was prejudicial.
Appellant testified that he learned in truck driving school and traffic school that he can drink three beers in an hour and still be under the legal intoxication limit. He testified that he drank less than three beers on the evening of his arrest, two at a bar and one in his car. Even if a chart had been admitted confirming appellant's understanding of alcohol consumption, it is obvious that the jury did not believe the testimony presented on how much appellant drank that day. There is overwhelming evidence of appellant's guilt. As aforementioned, appellant was presumably passed out in a running car parked in the roadway. Through the open window, an officer noticed an empty beer bottle between appellant's legs and smelled a strong odor of alcohol. Appellant's speech was slurred and slow. He was unsteady on his feet, and he failed three sobriety tests. Most importantly, his breath registered a blood alcohol content of .137 at 9:14 p.m., more than an hour after the stop. Moreover, his blood registered .094 at 11:35 p.m., almost four hours after the stop. Hence, the exclusion of the chart demonstrating the correlation between alcohol consumption, time and body weight was not prejudicial. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR
Appellant's fourth assignment of error alleges:
 "THE COURT ERRED IN NOT GRANTING THE DEFENSE'S MOTION FOR NEW TRIAL/MISTRIAL DUE TO PROSECUTORIAL MISCONDUCT OF AN IMPROPER LINE OF QUESTIONING OF THE DEFENDANT AND IMPROPER STATEMENT DURING CLOSING ARGUEMENTS [sic]."
Appellant characterizes two actions of the prosecutor as prosecutorial misconduct. Prosecutorial misconduct requires reversal if improper actions or remarks by the prosecutor prejudiced substantial rights of the defendant. State v. Clemons
(1998), 82 Ohio St.3d 438, 451, citing State v. Smith (1984),14 Ohio St.3d 13, 14-15.
On direct examination of appellant, defense counsel asked appellant if he had ever been drunk before, and appellant responded affirmatively. He then asked appellant if he had been drunk on the evening in question based upon past experience. Appellant responded negatively and stated that his driving was not impaired. (Tr. 222). On cross examination of appellant, the state began asking appellant about impairment. (Tr. 230-234). Appellant's counsel objected. A discussion was had on the record but outside the presence of the jury where the state argued that appellant opened the door to questions on his prior conviction of driving under the influence by mentioning that he was not impaired. (Tr. 231). The court recessed to ponder the issue. When the case proceeded, the state began questioning appellant on his personal knowledge of impairment. Appellant's counsel objected again, and a discussion was held off the record. When questioning recommenced, the state again asked appellant how he gained personal knowledge of impairment while driving. Appellant answered that he was convicted of driving under the influence in 1992. (Tr. 234-235).
Appellant complains that the prosecutor improperly elicited from appellant the fact that he had previously been convicted of driving under the influence. Appellant argues that this prior conviction is inadmissible. The state counters that appellant volunteered the information. The state also contends that defense counsel opened the door to the state's questioning, under Evid.R. 404 (A) (1), by placing character in issue. We disagree with the state's proposition that defense counsel opened the door to a previous conviction where defendant testified that he had been intoxicated before and that he was not intoxicated on the night of his arrest. We also refuse to characterize appellant's answer regarding his past conviction as volunteered. Many objections were made to the state's line of questioning. Discussions were held both on and off the record regarding the admissibility of the prior conviction. By overruling the objections, the court basically forced appellant to testify about his past conviction. Since the trial court overruled appellant's objections, this appears to be more of a case of trial court error than prosecutorial misconduct. The state thus argues that any error was harmless as there existed other evidence demonstrating appellant's guilt beyond a reasonable doubt.
In general, the existence of a prior conviction is inflammatory and should not be revealed to the jury unless specifically permitted under statute or rule. State v. Allen
(1987), 29 Ohio St.3d 53, 55. In Allen, the defendant had been convicted of driving under the influence twice within five years. These prior convictions were revealed to the jury at his third driving under the influence trial. The court held that it was not persuaded that the jury would have convicted the defendant absent the revelation. This case is distinguishable for various reasons. For instance, in the case at bar, only one prior conviction was revealed from six years prior. Also, appellant failed three field sobriety tests, while the defendant in Allen was not given such tests. Most importantly, as we have emphasized repeatedly, appellant's blood alcohol content registered .137 at 9:14 p.m. and .094 at 11:35 p.m. In Allen, there were no blood alcohol tests submitted to the jury. Accordingly, we hold that there was overwhelming evidence of appellant's guilt which rendered the revelation of the prior conviction nonprejudicial. See State v.Williams (1988), 38 Ohio St.3d 346, 351.
Next, appellant takes issues with certain phrases in the state's closing argument. The relevant portion of the closing argument is as follows:
 "[Appellant] was concerned about this test result, he may lose his job. Well, that is a possibility, he may lose his job. I don't know that. We don't know that, we didn't hear any actual testimony on that. However, when you balance the interest of Mr. Brletich's job, which is by the way, an over the road trucker, driving the big rigs, versus the impact a DUI can have on society as a whole, that's not a very big loss.
 Ladies and gentlemen, I submit to you that at this time [of] year, more probably than any other time of year —
 [Defense Attorney]: — Your Honor, I object to this line.
 "THE COURT: I do, too, and I will sustain the objection. The subject of punishment is for the Court, and the only question before the jury is that of guilt or innocence in this case." (Tr. 243-244).
The portions of the above quote that appellant characterizes as misconduct have been underlined. Appellant's only argument is that "the Prosecutor attempted to improperly influence the jury to base their decision not on the evidence, but upon the impact of DUI on society as a whole, especially by a truck driver, and during the Holiday Season." Appellant realizes that the court sustained the objection, but states that the court referred to prosecutorial comments other than those to which defense counsel was objecting.
Firstly, if an objection is entered and it appears that the court is addressing grounds different than those intended by the objector, it is the objector's duty to clarify and give the intended basis for the objection. Secondly, the prosecutor was stopped in mid-sentence when he began talking about the time of year. Regardless of propriety, prejudice is not apparent here. Thirdly, mentioning that appellant is a truck driver is not prejudicial. In fact, appellant first placed such a fact into the record.
Lastly, one phrase mentioning that driving under the influence impacts society as a whole is not materially prejudicial. Admittedly, prosecutors should not appeal to public sentiment in closing arguments by urging the jurors to protect society. State v. Spirko (1991), 59 Ohio St.3d 1, 13. However, the short phrase in the case at hand must be viewed in context.Id. The state was responding to appellant's complaint that he will lose his truck driving license and thus his job if he is convicted. The mere mention that driving under the influence impacts society was not so prejudicial that appellant's trial was tainted. See Clemons, supra at 452 (stating that improper prosecutorial comments are not reversible if they are not outcome determinative due to the existence of abundant incriminating evidence). As such, this argument is without merit. Appellant's last assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs, Waite, J., concurs.
 _________________________ JOSEPH J. VUKOVICH, JUDGE