JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Javan Payne, appeals his jury trial conviction for drug trafficking in violation of R.C. 2925.03; possession of drugs in violation of R.C. 2925.11; and possession of criminal tools in violation of R.C. 2923.24.
 {¶ 2} After receiving information concerning a drug dealer named "Chris," which is a nickname used by defendant, the police began investigating sales of heroin by defendant. While in the presence of one of the detectives, the confidential informant arranged a buy during a call to defendant. The detective bought 10 packs of heroin from defendant the same day, and he arranged to make a larger purchase on a later date.
 {¶ 3} The detective arranged another buy three days after the first buy. Learning that defendant's address was on Sandusky Avenue in Cleveland, the detective put the home under surveillance to see whether defendant would use that location to make the drug deal and then return to it after the deal was complete. With this information, they could obtain a search warrant for his home. They did see defendant leave this address to meet the detective who bought more heroin from him.
 {¶ 4} Several days later, the detective asked to buy 100 packets of heroin from defendant. The two other detectives who had obtained the warrant to search defendant's home set up surveillance on the street outside defendant's home. Defendant left his home, walked to his car, but did not get into the car. At this point the surveillance detectives decided to arrest him and execute the search warrant.
 {¶ 5} When defendant saw the two men running toward him, he ran away. The detectives who were chasing him testified that he threw down a brown paper bag as he was running. The police caught defendant and recovered the brown paper bag. They then executed the search warrant of defendant's home and found another packet of heroin in defendant's bedroom. They arrested defendant and gave him his Miranda warnings. After he had received the warnings, he continued to deny any connection to any of the heroin the detectives had found.
 {¶ 6} Following his conviction, defendant appealed, stating five assignments of error. The first is:
I. APPELLANT WAS DEINED [sic] DUE PROCESS OF THE UNITED STATES AND OHIO CONSTITUTIONS BY THE UNCONSTITUTIONALLY VAGUE APPLICATION OF R.C. 2925.03(C)(6)(E) [sic] WHICH ALLOWS FOR ITS ARBITRARY APPLICATION RESULTING IN GREAT DISPARITY OF PENALTY.
 {¶ 7} Defendant argues that the trafficking statute is unconstitutionally vague because its enforcement can be based on either the weight of drugs recovered or on the number of packaged units of drugs recovered. The disputed portion of the statute reads:
(A) No person shall knowingly do any of the following:
(1) Sell or offer to sell a controlled substance;
(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.
* * *
(C) Whoever violates division (A) of this section is guilty of one of the following: * * *
(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows:
* * *
(e) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds one hundred unitdoses but is less than five hundred unit doses or equals or exceeds ten grams but is less than fifty grams, trafficking in heroin is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree. If the amount of the drug involved is within that range and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in heroin is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree. (Emphasis added.)
R.C. 2925.03.
 {¶ 8} Defendant's conviction was for 100 or more unit doses of heroin. R.C. 2925.01(E) defines a unit dose as "an amount or unit of a compound, mixture, or preparation containing a controlled substance that is separately identifiable and in a form that indicates that it is the amount or unit by which the controlled substance is separately administered to or taken by an individual."
 {¶ 9} Defendant argues that if the prosecutor has charged him for the bulk amount of heroin instead of unit doses, he would have been convicted of possessing and trafficking only 2.48 grams and would have been eligible for probation instead of a mandatory prison sentence. He argues that this disparity makes the statute unconstitutionally vague.
 {¶ 10} This court has already addressed and rejected defendant's argument in State v. Powell (1993),87 Ohio App.3d 157: "We find the statutory definition of `unit dose' as applied to each single `rock' of crack cocaine in the case sub judice, like each of the one hundred single tablets of LSD in State v.Webster, * * *, requires absolutely no guesswork to determine that one rock constitutes one unit dose." Similarly, here, no guesswork is required to determine what constitutes one unit dose of heroin. As we explained in Powell, laws enacted by the General Assembly "`must be afforded a strong presumption of constitutionality.'" Id. at 163, quoting State v. Collier
(1991), 62 Ohio St.3d 267, 269. A party challenging a statute's constitutionality has the burden of proving beyond a reasonable doubt that it violates the constitution. Id. To prove that a statute is unconstitutionally vague, defendant must show that the statute failed in one of the following requirements:
Three "values" rationales are advanced to support the "void for vagueness" doctrine. * * * These values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited. Proper constitutional analysis necessitates a review of each of these rationales with respect to the challenged statutory language.
State v. Tanner (1984), 15 Ohio St.3d 1, 3, internal citation omitted.
 {¶ 11} The first requirement, that the statute provide fair warning to the ordinary person of what the crime is constituted of, is clearly not vague. Defendant specifically objects to the existence of two different measurements for the same quantity of drugs. As the Powell court ruled, "[t]he term defining the prohibited quantity is not `vague' since the quantity specified in the provision is specifically defined and limited to only two precise alternative objective criteria." Powell at 165. Defendant does not deny that the statute clearly designates possession of either 101 unit doses of heroin or 2.48 grams of heroin is illegal. Defendant had notice, therefore, that possession of heroin, by either measurement, was illegal.
 {¶ 12} The second requirement is that the statute not give the state the opportunity for arbitrary or capricious enforcement. The Powell court explained: "the existence of prosecutorial discretion concerning which offense to charge when two statutes prohibit the same conduct is not unconstitutional unless defendant demonstrates such discretion is exercised to impermissibly discriminate against a particular class of persons to which he belongs." Id. at 165. Defendant in the case at bar makes no argument that he was singled out as a member of a particular class for arbitrary enforcement or heavier punishment.
 {¶ 13} Finally, the statute must not unreasonably impinge upon or inhibit "fundamental constitutionally protected freedoms." Tanner at 3. Defendant here fails to point to any protected freedoms which are impinged upon by the statute. His whole argument relies on the fact that for the same amount of drugs he could be convicted and given different sentences. As the court in Powell ruled, however, this difference does not render the statute unconstitutionally vague. Defendant has failed to prove disparate enforcement of the statute between a class he belongs to and other classes. Accordingly, this assignment of error is overruled.
 {¶ 14} For his second assignment of error, defendant states: II. THE TRIAL COURT ERRED IN VIOLATION OF THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHICH PROVIDES RIGHTS TO CONFRONTATION AND CROSS-EXAMINATION, AND EVIDENCE RULES 801 AND 802, WHEN IT PERMITTED VARIOUS STATE WITNESSES TO TESTIFY WITH INADMISSIBLE HEARSAY STATEMENTS.
 {¶ 15} Defendant claims that the court allowed prejudicial hearsay into evidence through the testimony of the detectives. Defendant acknowledges that he did not object to this testimony at trial. Nonetheless, he points to the power given the court under Crim.R. 52 to find plain error.
 {¶ 16} The power to find plain error, however, is limited to exceptional circumstances and used only when necessary to avoid a miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91,94-95. In the case at bar, the first testimony defendant specifically complains of consists merely of the detective stating that initially the only information the police had about defendant was that he was known as "Chris." Defendant objects to this testimony because the detectives learned of it, along with the defendant's address, from the confidential informant. He argues that he "was prevented from cross-examining [the informant] about his possible motive for inculpating [defendant] or cross-examining him regarding the accuracy of the information." Appellant's brief at 10.
 {¶ 17} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). This testimony was part of a long line of questioning in which the prosecutor was eliciting from the detective the course of the investigation and asking why the detectives chose to take the actions they did. The answers given in this type of questioning are not hearsay, because the detectives did not give this information for the truth of the matter asserted, that is, to show that defendant was the person known as Chris or that he lived at the address the informant had given them.
 {¶ 18} In a similar case, the Ohio Supreme Court held that "[t]he testimony at issue was offered to explain the subsequent investigative activities of the witnesses. It was not offered to prove the truth of the matter asserted. It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. * * * The testimony was properly admitted for this purpose." State v. Thomas (1980),61 Ohio St. 2d 223, 232. See also State v. Byrd, Cuyahoga App. No. 82145, 2003 Ohio 3958, ¶ 35, internal citations omitted.
 {¶ 19} Defendant also objects to the testimony of the detective who bought drugs from defendant. This detective testified that he was standing next to the confidential informant when the informant called defendant and ordered drugs which the detective and the confidential informant subsequently bought from defendant. Defendant argues that he was not able to ascertain the accuracy of the phone call because he could not question the confidential informant about the person to whom he was speaking and what he had said to the defendant or what his incentive was for giving this information to the police.
 {¶ 20} Again, the detective gave this information while he was explaining how an undercover buy is executed. Even if the information had erroneously been admitted, the detective went on to testify that he used the same phone number the informant had given him for defendant and ordered drugs again several days later. The detective met with defendant alone for this second buy. Additionally, all this information was obtained to show why the detectives took the actions they did on the day they arrested defendant. He was never charged for either of the two buys the detective made. He was charged instead for the third scheduled buy when he was arrested with the 100 unit doses of heroin on him. The information the detective gave in testimony was not admitted erroneously.
 {¶ 21} Defendant also complains that his cell phone records were admitted without being properly authenticated. When the state moved to admit these records into evidence, defense counsel made no objection. Counsel did object to other exhibits but raised no objection to the phone records. Tr. 305. Further, these records are admissible as records kept in the regular course of business. Evid.R. 803(6).
 {¶ 22} Defendant does not dispute the accuracy of the bill itself; rather, he disputes the identity of the phone's owner as reflected in the bill. Defendant further argues that the bill listed the owner of the account as only C.P., not his name. Nonetheless, the billing address on the invoice was defendant's home address. Defendant admitted when he testified that he is sometimes known as Chris. He further challenges testimony of the detective who stated that he knew that the phone records he received were the correct ones because they corresponded with the phone number the other detective had used to call defendant. Testifying about a number the other detective called is arguably hearsay, offered to prove that this was the billing record of the number used to arrange the drug deals. Its admission, however, does not rise to the level of plain error. There was more than enough evidence to prove that this was the phone number defendant used to arrange the deals: the detective who called this number to arrange the deals testified on this matter, and the detective who arrested defendant removed from him a cell phone with this phone number.
 {¶ 23} Finally, defendant argues that without the confidential informant's statements being introduced the state would not have been able to prove that defendant lived at the address the informant gave to the detectives. We disagree. The detectives did not have to tell the jury how they knew to look for defendant at that address. Telling the jury that they saw him come out of that address and drop the drugs was more than adequate to place defendant there. The detectives testified about how they found out about the address as part of their explanation of how they obtained their search warrant for the house. The jury did not need to know, however, how the detectives got the search warrant; they needed to know only that it was legally executed.
 {¶ 24} Furthermore, defendant has failed to show how he was prejudiced by this testimony. The information the confidential informant gave to the detectives was later introduced as direct evidence from witnesses who testified at trial. The confidential informant's motivation for identifying defendant and telling the detectives where defendant lived is irrelevant to the issue in the case at bar, which is whether, using his cell phone as a criminal tool, defendant did or did not possess and traffic in drugs. Because all the objected to evidence was also provided through non-hearsay testimony, none of the alleged hearsay was information that otherwise would not have properly gone before the jury.
 {¶ 25} Because almost all the challenged testimony was not hearsay, that is, not given to prove the truth of the matter, and because defendant has failed to demonstrate prejudice resulting from any of the testimony, this assignment of error is overruled.
 {¶ 26} For his third assignment of error, defendant states: III. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND UNDER SECTIONS 10 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION WHEN IT ALLOWED HIS POST-ARREST SILENCE TO BE USED AGAINST HIM AT TRIAL.
 {¶ 27} Defendant objects to arresting detective's testimony regarding what was said after defendant was advised of his rights. Specifically, the detective stated that he "began to try talking with him to gain knowledge of what was going on in his drug sales, seeing if there was [sic] any other drugs in the house. We talked to him on that part, and after he was uncooperative, I had nothing else to do with him." Tr. 299.
 {¶ 28} Because defendant did not object to this testimony at trial, we must review this assignment of error under the plain error standard. Plain error is governed by Crim.R. 52.
The rule requires that a reviewing court find three things in order to correct an error without a timely objection to the error at trial. First, there must be an error. Second, the error must be an obvious defect in the trial proceedings. Finally, the error must have affected substantial rights, which has been interpreted to mean that the trial court's error must have affected the outcome of the trial.
State v. Taylor, Seneca App. No. 13-03-37, 2003 Ohio 7117. ¶ 17. State v. Barnes, 94 Ohio St.3d 21, 2002 Ohio 68,759 N.E.2d 1240.
 {¶ 29} As previously noted, plain error is used only in the exceptional case to avoid a manifest miscarriage of justice.Long, supra.
 {¶ 30} The state responds that the admission of this evidence is harmless error. We agree.
 {¶ 31} The evidence supporting defendant's conviction was overwhelming. See discussion under Assignment of Error V concerning manifest weight. Additionally, the complained of testimony essentially says that defendant denied that the drugs were his and reported that defendant would not cooperate. In his own testimony, defendant stated that once he stopped running from the officers, he "let them know that" he "didn't have anything on" him. Tr. 325. He also "told them that the bag wasn't" his. Tr. 326. Evidence exists, therefore, to show that defendant did cooperate with the police, but only before he received his Miranda rights. Because defendant was adamant from the start that he had no drugs, either on him or in his home, from his point of view, there was nothing more to say to the police. This claim remained defendant's argument consistently throughout the trial. When defendant took the stand, he repeatedly told the court that the drugs were not his and he had nothing to do with them. This is the exact conversation the detective had presented — a conversation which defendant now challenges as improperly admitted. Because the evidence is overwhelmingly in favor of conviction, the admission of this evidence of post-Miranda silence after making statements supporting his innocence is harmless error. Accordingly, this assignment of error is overruled.
 {¶ 32} For his fourth assignment of error, defendant states: IV. MR. PAYNE WAS DENIED HIS EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.
 {¶ 33} Defendant argues that because counsel failed to object to the allegedly hearsay statements discussed in the second assignment of error and the comment concerning his post-Miranda silence and his subsequent conversation discussed in the third assignment of error, he was denied effective assistance of counsel.
 {¶ 34} In order to demonstrate ineffective counsel, defendant must show not only that his counsel's representation fell below the standard of that of competent attorneys, but also that, but for that substandard representation, the outcome of his trial would have been different. Strickland v. Washington (1984),466 U.S. 668; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 35} As will be shown in the fifth assignment of error, even if the representation counsel provided had fallen below the standard of competent attorneys, defendant did not prove that the outcome of the trial would have been different. Specifically, he has failed to show that but for counsel's alleged errors in failing to object to hearsay evidence and to the comment on defendant's post-Miranda silence, the outcome of his trial would have been different. Accordingly, this assignment of error is overruled.
 {¶ 36} For his fifth assignment of error, defendant states: V. MR. PAYNE'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 37} Defendant claims that the jury's verdict was against the manifest weight of the evidence. He points to the fact that the confidential informant never testified, that the police offered no videotape of any drug transactions, that they did not test the bag of drugs for fingerprints, that they did not recover any scales or buy money on defendant or in his home, and that the only witnesses against him were police officers. He also points to his own testimony in which he denied having anything to do with the drugs.
 {¶ 38} When an appellate court is reviewing a case for the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2D 541, 545-546. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"`thirteenth juror'"' and disagrees with the factfinder's resolution of the conflicting testimony." Id, citing Tibbs v.Florida (1982) 457 U.S. 31, at 42. In a challenge to the manifest weight of the evidence, a court reviews the record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way * * *."Thompkins, 387.
 {¶ 39} This court further "delineated the following factors as guidelines or considerations" for a reviewing court "to take into account when weighing the evidence":
 {¶ 40} 1. that a reviewing court is not required to accept as true the incredible;
 {¶ 41} 2. whether evidence is uncontradicted;
 {¶ 42} 3. whether a witness was impeached;
 {¶ 43} 4. what was not proved;
 {¶ 44} 5. the certainty of the evidence;
 {¶ 45} 6. the reliability of the evidence;
 {¶ 46} 7. whether a witness' testimony is self-serving;
 {¶ 47} 8. whether the evidence is vague, uncertain, conflicting, or fragmentary. State v. Mattison (1985),23 Ohio App.3d 10, 14, citing State v. Gaston (Jan. 11, 1979), Cuyahoga App. No. 37846.
 {¶ 48} In the case at bar, the state presented the testimony of a detective who had called defendant on his cell phone and arranged to buy drugs from him. It also presented the testimony of the detective who saw defendant throw the bag of drugs to the ground when the detectives were chasing him in his yard. The amount of drugs, 100 dose units, was exactly the amount that the undercover detective had arranged to buy from defendant immediately prior to the time defendant was leaving his house. This evidence was credible and consistent with everything defendant testified to, for example, the sequence of events, the location of the people and autos, the rooms searched by the police, and the time and location of the incident, except defendant denied that he had ever had the drugs.
 {¶ 49} After reviewing the entire record, weighing all the evidence and all reasonable inferences and considering the credibility of the witnesses, we conclude that appellant's conviction was not against the manifest weight of the evidence. Accordingly, we overrule appellant's fifth assignment of error.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Blackmon, J., concur.