[Cite as *State v. Tagliaferri*, 2013-Ohio-549.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

STATE OF OHIO,                                    :         **O P I N I O N**

           Plaintiff-Appellant,          :

      - vs -                                        :         **CASE NO.  2012-P-0094**

JODIE L. TAGLIAFERRI,                       :

           Defendant-Appellee.          :

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2012 TRC 5010.

Judgment:  Reversed and remanded.


*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Dan J. Weisenburger*, 121 East Main Street, Ravenna, OH 44266 (For Defendant-Appellee).


DIANE V. GRENDELL, J.

{¶1}    Plaintiff-appellant, the State of Ohio, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, granting defendant-appellee, Jodie L. Tagliaferri's, Motion to Suppress and Motion in Limine.  The issue to be decided in this case is whether a trial court, in the performance of its role as gatekeeper, may require the State to demonstrate the general scientific reliability of a breath testing instrument where the Ohio director of health has approved such instrument for

determining the concentration of alcohol in a person's breath. For the following reasons, we reverse and remand the decision of the court below.

{¶2} On April 14, 2012, Tagliaferri was issued a traffic ticket, charging her with Operating a Vehicle While Under the Influence (OVI), a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a); OVI, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(d); and Improper Passing, a minor misdemeanor, in violation of R.C. 4511.27.

{¶3} On May 30, 2012, the State filed a "Brief Regarding Intoxilyzer 8000 Hearing." In that Brief, the State argued that it need not present evidence to establish the general reliability of the Intoxilyzer 8000, citing *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984).

{¶4} On June 14, 2012, Tagliaferri filed a Motion in Limine, arguing that the results of the breath test conducted with the Intoxilyzer 8000 had "not been accepted by [the trial court] as [an] accurate and reliable testing instrument." The Motion in Limine asserted that the trial court should apply its decision in *State v. Johnson*, Portage County Municipal Court case 2011 TRC 04090, to restrict the State from admitting the results of the breath test at trial in the present case.

{¶5} On the same date, Tagliaferri filed a Motion to Suppress, asserting that the results of the breath test taken with the Intoxilyzer 8000 should be excluded. In the motion, she raised various alleged errors related to the test, including, inter alia, that the breath samples were not analyzed properly or taken in accordance with the law, that the instrument operator was not properly qualified, and that the instrument used in her case

2

"failed to automatically perform a dry gas control test" as required by the Ohio Administrative Code.

{¶6} A hearing on the Motion to Suppress and Motion in Limine was held on August 9, 2012. At that hearing, the court noted that both sides had submitted briefs regarding issues related to the Intoxilyzer 8000 test. The State requested that the court "accept the general reliability" of the test, while Tagliaferri argued that the court should follow its prior decision in *Johnson* and not allow the Intoxilyzer results into evidence.

{¶7} In an August 9, 2012 Journal Entry, the trial court granted what it referred to as Tagliaferri's "Motion to Suppress Motion In Limine," with respect to the results of the Intoxilyzer 8000. The court noted that it "limits its review of Defendant's Motion to Suppress Motion in Limine solely to the admissibility of a BAC test from the Intoxilyzer 8000." It found that the issue in the present matter was "identical" to the one in *State v. Johnson*. In *Johnson*, the trial court held that the State was required to present evidence at a hearing for the trial court to determine the general scientific reliability and admissibility of the breath test results of the Intoxilyzer 8000. In the present matter, the court held that "the rationale and findings in *Johnson* are likewise applicable to this case." It held that the "results of the breath results from the Intoxilyzer 8000 are not admissible at the trial of Defendant," and that "[t]he remaining charges alleging a violation of ORC 4511.19(A)(1)(a) and 4511.27 shall be set for trial on the Court's docket."

{¶8} The State timely appeals and raises the following assignment of error:

{¶9} "The Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶10} The appropriate standard of review where the lower court's judgment is challenged on a purported misconstruction of the law is de novo. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16. "In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court." (Citation omitted.) *Id.*

{¶11} In its sole assignment of error, the State argues that, pursuant to the provisions of R.C. 3701.143 and Ohio Adm.Code 3701-53-02(A), a trial court is required to accept the Intoxilyzer 8000 as an appropriate device for chemically analyzing a person's breath to determine the amount of alcohol in the breath. It further argues that pursuant to *Vega*, a defendant may not attack the general reliability of a breath testing instrument and the State is not required to present evidence to support a determination that the test is generally reliable.

{¶12} Tagliaferri rejects the State's argument for several reasons, including the contention that the use of the word "may" in the phrase "the court may admit evidence on the concentration of alcohol" in the OVI statute and the Ohio Rules of Evidence recognizes the trial court's discretion to admit and exclude evidence, and that a threshold showing of reliability by the State is required.

{¶13} The Ohio General Assembly has charged the Ohio director of health to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol * * * in the

4

person's * * * breath[.]" R.C. 3701.143. The Intoxilyzer 8000 has been approved as an "evidential breath testing instrument" by the director of health. Ohio Adm.Code 3701-53-02(A)(3).

{¶14} This court has recently addressed the exact issue raised by the State regarding the general reliability of the Intoxilyzer 8000 and determined that, pursuant to *Vega*, a defendant may not make "a general attack upon the reliability and validity of the breath testing instrument," although breath test results are subject to challenge on a variety of grounds, including specific attacks on the reliability of the test and attacks on the performance of the test in a specific defendant's case. *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 30-32; *State v. Carter*, 11th Dist. No. 2012-P-0027, 2012-Ohio-5583, ¶ 25 and 35; *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584, ¶ 24 and 32.

{¶15} As was discussed in the foregoing cases, the lead Ohio Supreme Court case on this issue is *Vega*, in which the court addressed the issue of whether the general reliability of intoxilyzers could be challenged "in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C. 4511.19 if analyzed in accordance with methods approved by the Director of Health." 12 Ohio St.3d at 186, 465 N.E.2d 1303. In *Vega*, the Ohio Supreme Court made clear that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument," since the General Assembly "ha[s] legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188, 190.

{¶16} While no general attack on reliability may be made, when duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with

5

methods approved by the director of health by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). The Ohio Supreme Court has affirmed that "[t]here is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing procedures at trial going to weight rather than admissibility." *Vega* at 189. Thus, "[t]he defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels." *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984); *French*, 72 Ohio St.3d at 451-452, 650 N.E.2d 887.

{¶17} In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under *Vega*. *See Vega* at 189.

{¶18} Tagliaferri also argues that the delegation of authority to the director of health to determine the validity of testing devices violates the separation of powers doctrine and infringes upon the trial court's role as gatekeeper and its regulation of the admission of expert testimony under Evidence Rule 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

{¶19} "The Ohio Rules of Evidence, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." (Citation omitted.) *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio

6

St.3d 451, 491, 715 N.E.2d 1062 (1999). "In order to demonstrate the legislature infringed upon the judiciary's power to enact evidentiary rules appellant must demonstrate the legislation contradicts or is an attempt to supersede an existing evidentiary rule." *State v. Boczar*, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, ¶ 38.

**{¶20}** The delegation of authority to the director of health to establish the appropriate methods for determining the amount of alcohol in a defendant's bodily substances does not conflict with any Rule of Evidence. Tagliaferri refers to Evidence Rule 702 as interpreted in *Daubert*; but nothing in this rule establishes the trial court as the sole "gatekeeper" with respect to the general reliability of instruments measuring the concentration of alcohol in a person's bodily substances. On the contrary, Evidence Rule 102 states that "[t]hese rules shall not supersede substantive statutory provisions." Assertions that *Daubert* precludes a conclusion that the State is not required to present evidence of general reliability have been previously rejected by this court. *Miller*, 2012-Ohio-5585, at ¶ 29, citing *State v. Massie*, 2nd Dist. No. 2007 CA 24, 2008-Ohio-1312, ¶ 36 (noting that a *Daubert* challenge or presentation of expert testimony is "forestalled by the 'legislative mandate recognized in *Vega*'") (citation omitted); *Rouse*, 2012-Ohio-5584, at ¶ 28 ("a *Daubert* hearing is unnecessary as it pertains to the general reliability of the Intoxilyzer").

**{¶21}** The Ohio Supreme Court, in *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, expressly characterized R.C. 4511.19(D)(1) as a "three-paragraph gate-keeping statute." *Id.* at ¶ 20. Where R.C. 4511.19(D)(1) is satisfied, it does "no[t] matter under which portion of R.C. 4511.19(A) a person is charged, the state has the opportunity to offer the results of a 'bodily substance' test to show either

7

impairment * * * or to show that the statutory concentrations of alcohol or drugs have been exceeded." *Id.* at ¶ 19.

{¶22} In a similar situation, the Ohio Supreme Court considered the General Assembly's authority to statutorily provide for the admissibility of the results of field sobriety tests based on substantial compliance, rather than the strict compliance standard, based on common law, adopted by Ohio courts. The Supreme Court found no encroachment "on the exclusive rule-making authority of the judiciary." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 22. While acknowledging that "[t]he trial judge is the guardian of the admissibility of evidence," the General Assembly, "through its deliberative process," could conclude "that failure to strictly comply with test procedures affects the evidentiary value of field sobriety tests but that substantial compliance will not result in the tests' exclusion," i.e., "that the tests are sufficiently reliable to be admissible by meeting a clear-and-convincing standard." *Id.* at ¶ 23.

{¶23} Likewise, in the present case, R.C. 3701.143 and R.C. 4511.19(D)(1) do not preempt the trial court's authority to rule on the ultimate admissibility of evidence, but rather delegate the preliminary determination regarding the general scientific reliability of testing devices to the director of health. As noted above, the defendant may always challenge the accuracy of his or her specific test results and the qualifications of the person administering the test, and otherwise strive to discredit the weight to be given the specific test results, as well as make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons instead of general assertions of the State's failure to prove its reliability. This is also consistent with this court's recent

holding in *Rouse*. 2012-Ohio-5584, at ¶ 21 ("a defendant is entitled to produce evidence to assail the particular results of the subject test, thereby preserving the trial court's role as gatekeeper"). Therefore, Tagliaferri's contentions that she is left with "no means" to challenge the reliability of the Intoxilyzer and is deprived of her right to present a defense are unfounded.

{¶24} Tagliaferri also asserts that *Vega* is distinguishable from the present matter since the law regarding OVI offenses has changed since *Vega* was decided. She notes that the statutes enacted post-*Vega* involve "per se" offenses, which prohibit driving with a certain blood alcohol level, and that the blood alcohol test is essentially conclusive of whether the crime of OVI has been committed.

{¶25} As was noted by this court in *Carter*, however, "[t]he Supreme Court reaffirmed its holding in *Vega* in *State v. Tanner*, 15 Ohio St.3d 1, 472 N.E.2d 689 (1984), and applied it to per se OVI violations. The court in *Tanner* held: '[t]he defendant may still challenge the accuracy of his specific test results, although *he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels*.' (Emphasis added.) *Id*. at 6." 2012-Ohio- 5583, at ¶ 27. Even in cases involving per se violations, the courts must follow the requirement of *Vega* to accept the general accuracy of Intoxilyzer 8000 results, especially given that a defendant is still able to raise specific challenges to his test results, even in cases of per se violations.

{¶26} We note that, in the present case, Tagliaferri challenged the breath test results of the Intoxilyzer 8000 in her Motion to Suppress based on several grounds, including, inter alia, that the testing instrument was not working properly, the instrument

9

operator lacked the necessary qualifications, a dry gas control test was not performed, and that other regulations related to the breath test were not followed. She also raised other issues unrelated to the breath test, including whether there was reasonable suspicion to conduct the stop. However, the municipal court appears to have granted Tagliaferri's Motion solely on the grounds stated in *Johnson*, that the State failed to produce evidence of the Intoxilyzer 8000's general scientific reliability and not on any other grounds raised in the Motion to Suppress. Accordingly, on remand, it will be necessary for the court to hold another hearing to address the other issues raised in Tagliaferri's Motion to Suppress. *Miller*, 2012-Ohio-5585, at ¶ 34. While Tagliaferri argues specifically in her brief that the failure to run the dry gas control test rendered the breath test results inadmissible, this issue has not yet been considered by the court below, since it granted the Motion based only on the general admissibility issue. Therefore, this issue can be considered upon remand with the others raised in the Motion to Suppress.

{¶27} The sole assignment of error is with merit.

{¶28} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, granting Tagliaferri's Motion to Suppress and Motion in Limine, is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.


TIMOTHY P. CANNON, P.J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

10

_____

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶29} R.C. 4511.19(D)(1)(b) does not mandate admissibility of breath test results derived from the Intoxilyzer 8000. Rather, that statute which, by its plain language controls the issue in this case, vests the trial court with discretion regarding admissibility despite approval from the director. I, therefore, respectfully dissent.

{¶30} R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time. In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C.4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the reliability of an approved breath testing device before admitting the results.

{¶31} R.C. 4511.19(D)(1)(b) states that "[i]n any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation[,]" and "[t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of

11

health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."  (Emphasis added.)

**{¶32}** The statute does not use the word "shall," which would mandate admission regardless of the circumstances.  Rather, the statute uses the word "may." For purposes of statutory construction, "use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary * * *." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *State v. Suchevits*, 138 Ohio App.3d 99, 102 (11th Dist. 1999).

**{¶33}**  In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C.4511.19(D)(1)(b).  As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court.  *Knott v Revolution Software Inc.* 181 Ohio App.3d 519, 2009-Ohio-1191, ¶45 (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

**{¶34}**  Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

**{¶35}** "Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the

hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.' (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available." *State v. Small,* 162 Ohio App.3d. 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F. 2d. 1317, 1328 (6th Cir. 1989).

**{¶36}** However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; "[substantive] * * * due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence." *Barefoot v. Estelle,* 463 U.S. 880, 931, fn. 10 (1983).

**{¶37}** The trial court was aware that other courts had deemed the Intoxilyzer 8000 unreliable even though it was approved. Against the backdrop, the court ordered the state to establish the general reliability of the Intoxilyzer 8000 before admitting the results. Given the constitutional gravity of admitting unreliable results, however, and its statutory authority to act as gatekeeper regarding breath test results, the lower court's decision to require the state to produce evidence of the machines reliability was an eminently reasonable and sound legal decision. "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11.

**{¶38}** Rather than present evidence of the general reliability of the Intoxilyzer 8000, the state took the position that the trial court could not require it to do so pursuant

13

to *Vega* and its progeny. *Vega,* 12 Ohio St.3d 185 (1984). I do not read *Vega* as holding that under no circumstances can a trial court exercise its discretion to require evidence of general reliability of an approved breath testing device as a condition to admissibility.

**{¶39}** In *Vega,* the court held "* * * an accused is not denied his constitutional right to *present a defense* nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the *reliability of intoxilyzers in general.*" (Emphasis added.) *Id.* at 186.

**{¶40}** Threshold admissibility was not at issue in *Vega.* That is, the defendant made no challenge to the trial court's admission of his breath test result. Instead, after the state presented its case and rested, the defendant attempted to present a "reliability" defense by attacking intoxilyzers in general. *See also State v. Vega,* 5th Dist. No. CA-1766, 1993 Ohio App LEXIS 14350, *16 (Nov.22, 1983)(Hoffman, J., dissenting). Unlike *Vega,* 12 Ohio St.3d 185, threshold admissibility is the issue in the case before us. Moreover, unlike *Vega,* our case is not about the reliability of intoxilyzers in general. Our case is limited to whether the Intoxilyzer 8000 is reliable. In short, the circumstances at issue in *Vega* were fundamentally distinguishable from those in our case.

**{¶41}** Additionally, the rule in *Vega* does not contemplate a situation where, as here, an approved device's general reliability has been assessed by other courts for both use in and out of this state and the device's reliability has been found suspect. *See State v. Johnson*, Portage County Municipal Court, January 6, 2012. *Vega* expressly states that its holding does not involve a situation where there was an

assertion that there was an abuse of discretion by the director in approving the breath testing device at issue. *Vega* at 187, fn. 2. Obviously, in our case if the Intoxilyzer 8000 is unreliable, approval would amount to an abuse of discretion and admission of the test results a violation of substantive due process.

{¶42} Breath tests are "'* * * generally recognized as being reasonably reliable on the issue of intoxication when conducted *with proper equipment* and by competent operators.'" (Emphasis added.) *Vega* at 186, quoting *Westerville v. Cunningham*, 15 Ohio St.2d 121, 128(1968). Thus, the central issue as presented in the case before us, does the Intoxilyzer 8000 qualify as "proper equipment"? The answer is "yes" if it is generally reliable and "no" if it is not. This is a query, however, that, under Ohio law, a trial court is entitled to resolve pursuant to R.C. 4511.19(D)(1)(b).

{¶43} In this case, the trial court exercised its discretion to safeguard the defendant's right to substantive due process by merely requiring the state to show the Intoxilyzer 8000 is generally reliable. Under the circumstances, this decision was sound and reasonable. This is particularly true in light of the fact that a trial court is vested with broad discretion in the admission or exclusion of evidence and in recognition that it has inherent power to exclude or strike evidence *on its own motion. Caroll v Caroll*, 7th Dist. No. 89-C-1, 1990 Ohio App. LEXIS 1339, *8 (April 5, 1990); *Neil v. Hamilton County*, 87 Ohio App.3d 670; *Oakbrook Realty Corp. v. Blout*, 48 Ohio App.3d 69, 70 (10th Dist. 1988).

{¶44} Given the foregoing point, there is no reason to remand this case to the trial court based upon perceived inadequacies in the motion to suppress. The trial court made it abundantly clear that it would not admit the test results absent proof of reliability

15

of the Intoxilyzer 8000. Requiring the proponent to establish the reliability of scientific evidence is something that a trial court *may require* as previously discussed. The state was well aware of what the trial court required when it ordered it to produce evidence of the Intoxilyzer 8000's reliability, independent and irrespective of the contents of the motion to suppress. Accordingly, there is no procedural due process violation of the state's right to notice and an opportunity to be heard. The trial court's order was unambiguous and an exercise of the sound discretion as the gatekeeper of breath test result admissibility.

{¶45} When an appellate court [**14] is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Sertz v. Sertz*, 11th Dist. No. 2011-L-063, quoting *Beechler*, 2010-Ohio-1900 at ¶67.

{¶46} This appeal is centered around a discretionary decision made by the trial court. As I find the court's decision not only reasonable, but constitutionally astute, I would affirm the trial court's exclusion of the breath test in light of the state's refusal to present evidence on the issue.