[Cite as *State v. O'Neill*, 2013-Ohio-2619.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-P-0116** |
| STEPHEN P. O'NEILL, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. R 2012 TRC 5539.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Dan J. Weisenburger*, 121 East Main Street, Ravenna, OH 44266 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1}   Plaintiff-appellant, the State of Ohio, appeals the judgment of the Portage County Municipal Court, Ravenna Division, holding the breath test results of the Intoxilyzer 8000 would not be admissible at trial in a prosecution for driving with a prohibited breath alcohol concentration (OVI). The issue before this court is whether a trial court, exercising its role as evidentiary gatekeeper, may pass judgment on the general reliability of a breath testing instrument where the Ohio director of health has

approved such instrument for determining the concentration of alcohol in a person's breath. For the following reasons, we affirm the decision of the court below.

{¶2} On April 27, 2012, the Ohio State Highway Patrol issued defendant-appellee, Stephen P. O'Neill, a traffic ticket, charging him with OVI, a misdemeanor of the first degree in violation of R.C. 4511.19(A)(1)(a) (driving under the influence of alcohol) and (d) (driving with a prohibited breath alcohol concentration), a Speed violation, a minor misdemeanor in violation of R.C. 4511.21(C), and a Safety Belt violation, a minor misdemeanor in violation of R.C. 4513.263.

{¶3} On May 2, 2012, O'Neill entered a plea of not guilty.

{¶4} On September 12, 2012, O'Neill filed a Motion in Limine, seeking to prevent the prosecution from introducing the "results of testing conducted upon the Defendant using an Intoxilyzer 8000," pursuant to Evidence Rules 104, 401, and 702. O'Neill asserted: "To date there has been no documentation in this jurisdiction, via a hearing on the merits or otherwise, that the Intoxilyzer 8000 device, used in this particular instance, is accurate to a legal degree of certainty and scientifically reliable in order to establish such a device as admissible evidence in a courtroom." O'Neill further asserted that the results were inadmissible due to the state trooper's failure "to run * * * a Dry Gas Control."

{¶5} On September 13, 2012, the matter came before the municipal court for trial. The court ruled that it was suppressing the results of the Intoxilyzer 8000, despite the captioning of the motion as one in limine, based on its prior decisions in *State v. Johnson*, Case No. R 2011 TRC 4090, and *State v. Consolo*, Case No. R. 2011 TRC 16608. The court granted the State a stay of execution pending appeal.

{¶6} On September 17, 2012, the State filed its Notice of Appeal.

{¶7} On appeal, the State raises the following assignment of error:

{¶8} "[1.] [The] Portage County Municipal Court erred in permitting a general attack on the scientific reliability of the Intoxilyzer 8000 contrary to Ohio statutes and well-established case law."

{¶9} Where the lower court's judgment is challenged on a purported misconstruction of the law, the appropriate standard of review is de novo. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16. "In determining a pure question of law, an appellate court may properly substitute its judgment for that of the trial court." (Citation omitted.) *Id.*

{¶10} This court has previously held that a defendant may not make a general challenge to the scientific reliability of a breath testing device, where that device has been approved by the Ohio director of health as an appropriate device for chemically analyzing a person's breath to ascertain the amount of alcohol therein, pursuant to Sections 3701.143 and 4511.19(D)(1)(b) of the Ohio Revised Code, and Ohio Administrative Code 3701-53-02(A)(3). *State v. Miller*, 11th Dist. No. 2012-P-0032, 2012-Ohio-5585, ¶ 21-30; *State v. Rouse*, 11th Dist. No. 2012-P-0030, 2012-Ohio-5584, ¶ 14-28.

{¶11} O'Neill contends that a trial court retains discretion to refuse to admit breath test results in its role as "gatekeeper" and under Ohio's Rules of Evidence. The prior decisions of the Ohio Supreme Court, this court, and other appellate districts compel a different conclusion. Contrary to O'Neill's position, the trial court's discretion to admit or exclude evidence is restricted to determining whether the breath test was

3

conducted "in accordance with methods approved by the director of health" and "by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). The court's discretion under R.C. 4511.19(D)(1)(b) does not permit it to exclude test results based on the "scientific accuracy and reliability" of the breath testing device, as was done in the present case.

{¶12} The lead Ohio Supreme Court case on this issue is *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), in which the court addressed the issue of whether the general reliability of intoxilyzers could be challenged "in view of the fact that the General Assembly has legislatively provided for the admission of such tests in R.C. 4511.19 if analyzed in accordance with methods approved by the Director of Health." *Id.* at 186. The Supreme Court ruled that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument." *Id.* at 190. The court explained that, by enacting R.C. 4511.19, the General Assembly "ha[s] legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." *Id.* at 188. "[The judiciary must recognize] the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, the discretionary authority for adoption of appropriate tests and procedures, including breath test devices." *Id.* at 188-189, citing *State v. Brockway*, 2 Ohio App.3d 227, 232, 441 N.E.2d 602 (4th Dist.1981).

{¶13} In subsequent decisions, the Ohio Supreme Court reaffirmed its holding in *Vega*. The court has emphasized that, when regulations are promulgated pursuant to

4

R.C. 4511.19 and 3107.143, "it must be presumed that the Director of Health acted upon adequate investigation," and that the courts "must defer to the department's authority and * * * not substitute our judgment for that of the Director of Health." *State v. Yoder*, 66 Ohio St.3d 515, 518, 613 N.E.2d 626 (1993).

{¶14} The basic holding of *Vega* has been followed by other appellate districts. *See State v. Tenney*, 2nd Dist. No. 24999, 2012-Ohio-3290, ¶ 5 ("R.C. 4511.19 provides that a breath-test result is admissible if the breath test was performed in compliance with the procedures established by the state director of health."); *State v. Fisher*, 1st Dist. No. C-080497, 2009-Ohio-2258, ¶ 27 ("R.C. 4511.19 represents a legislative determination that certain breath-testing devices are generally reliable," and "has replaced the common-law foundational requirements for admissibility"); *State v. Luke,* 10th Dist. No. 05AP-371, 2006-Ohio-2306, ¶ 24 (the "legislative mandate for admissibility obviates the need for trial courts to determine admissibility based upon reliability of the processes and methods underlying the use of breath testing machines").

{¶15} O'Neill alternatively contends that the legislative mandate in R.C. 3701.143 and 4511.19(D)(1)(b) usurps the Ohio Supreme Court's authority to promulgate rules of evidence and violates the constitutional doctrine of separation of powers.

{¶16} "The supreme court shall prescribe rules governing practice and procedure in all courts of the state * * *.  All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."  Ohio Constitution, Article IV, Section 5(B).  Thus, "the Ohio Rules of Evidence, which were promulgated by the Supreme Court pursuant to Section 5(B), Article IV of the Ohio Constitution, must

5

control over subsequently enacted inconsistent statutes purporting to govern evidentiary matters." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 491, 715 N.E.2d 1062 (1999). "In order to demonstrate the legislature infringed upon the judiciary's power to enact evidentiary rules appellant must demonstrate the legislation contradicts or is an attempt to supersede an existing evidentiary rule." *State v. Boczar*, 11th Dist. No. 2004-A-0063, 2005-Ohio-6910, ¶ 38. "When a statute does not conflict with a Rule of Evidence, a statute can control the admissibility of evidence." *State v. Cross*, 11th Dist. No. 2004-L-208, 2006-Ohio-1679, ¶ 21.

{¶17} The delegation of authority to the director of health to establish the appropriate methods for determining the amount of alcohol in a defendant's bodily substances does not conflict with any Rule of Evidence. O'Neill refers to Evidence Rules 104(A) and 702; but nothing in these Rules establishes the trial court as the sole "gatekeeper" with respect to the general reliability of instruments measuring the concentration of alcohol in a person's bodily substances. On the contrary, Evidence Rule 102 states that "[t]hese rules shall not supersede substantive statutory provisions." The Staff Notes elaborate further by stating, "[t]he Rules of Evidence * * * are not an exhaustive compilation of the rules governing evidence questions, nor are the rules preemptive as to subjects that they do not address."

{¶18} The Ohio Supreme Court, in *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, expressly characterized R.C. 4511.19(D)(1) as a "three-paragraph gate-keeping statute." *Id.* at ¶ 20. Where R.C. 4511.19(D)(1) is satisfied, it does "no[t] matter under which portion of R.C. 4511.19(A) a person is charged, the state has the opportunity to offer the results of a 'bodily substance' test to show either

6

impairment * * * or to show that the statutory concentrations of alcohol or drugs have been exceeded." *Id.* at ¶ 19.

{¶19} It has also been observed that "the legislature has created standards for the admissibility of evidence in many instances." *State v. Phipps*, 3rd Dist. No. 2-03-39, 2004-Ohio-4400, ¶ 12.[1]

{¶20} In a similar situation, the Ohio Supreme Court considered whether the General Assembly's authority statutorily provided for the admissibility of the results of field sobriety tests based on substantial compliance, rather than the strict compliance standard, based on common law, adopted by Ohio courts. The Supreme Court found no encroachment "on the exclusive rule-making authority of the judiciary." *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 22. While acknowledging that "[t]he trial judge is the guardian of the admissibility of evidence," the General Assembly, "through its deliberative process," could conclude "that failure to strictly comply with test procedures affects the evidentiary value of field sobriety tests but that substantial compliance will not result in the tests' exclusion," i.e., "that the tests are sufficiently reliable to be admissible by meeting a clear-and-convincing standard." *Id.*

{¶21} Concerns about the reliability of the results in the absence of strict compliance could be addressed by the defense on cross-examination. *Id.*

---

1. As examples, the Third District Court of Appeals noted: R.C. 2907.02(D) (limiting the admissibility of evidence regarding a victim's sexual activity in prosecutions for Rape); R.C. 4513.263(F) (limiting the permissible uses of evidence regarding the use of occupant restraining devices); R.C. 2925.51(A) (providing that laboratory reports constitute "prima-facie evidence of the content, identity, and weight" of controlled substances); and R.C. 2317.47 (providing for blood-grouping tests to determine identity or paternity).

{¶22} Likewise in the present case, R.C. 3701.143 and R.C. 4511.19(D)(1) do not preempt the trial court's authority to rule on the admissibility of evidence, but rather delegate the preliminary determination regarding the scientific reliability of testing devices to the director of health. That determination is not conclusive as to the ultimate admissibility of the test results. As noted above, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health." R.C. 4511.19(D)(1)(b). The defendant may always challenge the reliability/accuracy of his or her specific test results and the qualifications of the person administering the test and otherwise strive to discredit the weight to be given the specific test results, such as by impeaching the instrument's general reliability. *Vega*, 12 Ohio St.3d at 189, 465 N.E.2d 1303; *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984).

{¶23} Accordingly, we reaffirm our prior holding:

{¶24} When duly challenged, the State must demonstrate that the bodily substance was "analyzed in accordance with methods approved by the director of health" and "by an individual possessing a valid permit." R.C. 4511.19(D)(1)(b). *Vega* recognized that "[t]here is no question that the accused may * * * attack the reliability of the specific testing procedure and the qualifications of the operator," as well as present "expert testimony as to testing procedures at trial going to weight rather than admissibility." *Vega*, 12 Ohio St.3d at 189, 465 N.E.2d 1303. Thus, "[t]he defendant may still challenge the accuracy of his specific test results, although he may not

8

challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels." *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984); [*Columbus v.*] *Aleshire*[, 187 Ohio App.3d 660, 2010-Ohio-2773, 933 N.E.2d 317,] ¶ 27 [10th Dist.].

**{¶25}** In addition to attacks on the specific performance of a particular breath test in an individual defendant's case, a defendant may also make an attack on the reliability of the Intoxilyzer 8000 based on specific reasons. While, as discussed above, the machine is presumed to be generally reliable, a defendant may raise specific issues related to its reliability in a motion to suppress, as opposed to general assertions that the State failed to prove its reliability, which is prohibited under *Vega*. *See Vega* at 189.

*Miller*, 2012-Ohio-5585, at ¶ 31-32.

**{¶26}** The State's sole assignment of error is with merit.

**{¶27}** Although the municipal court erroneously suppressed the breath test results of the Intoxilyzer 8000 based on a challenge to its general reliability, we affirm the lower court's decision. The municipal court identified, as an independent basis for suppressing the test results, the purported failure of law enforcement to comply with the directive of the Ohio director of health that the Intoxilyzer 8000 "shall automatically perform a dry gas control test before and after every subject test." Ohio Adm.Code 3701-53-04(B); R.C. 4511.19(D)(1)(b) ("[t]he bodily substance withdrawn under division

9

(D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health").

{¶28} On appeal, the State has not challenged the municipal court's judgment with respect to the failure to perform the breath test in accordance with the director of health's directives. Accordingly, we affirm the municipal court's judgment on that basis, without expressing any opinion as to the merits of that determination.

{¶29} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, granting O'Neill's Motion in Limine, is affirmed. Costs to be taxed against the parties equally.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only with a Concurring Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in judgment only with a Concurring Opinion.

{¶30} I concur with the majority's decision to affirm the trial court's judgment with respect to the failure to perform the breath test properly. However, I would also affirm the trial court's exercise of its discretion in excluding the results from the Intoxilyzer 8000.

{¶31} As the majority notes, the state relies on *Vega*, 12 Ohio St.3d 185. I do not believe that *Vega* stands for the sweeping proposition advanced by the state – i.e., that the results of all tests from breath analysis machines approved by the Director of

10

Health for use in OVI cases must, automatically, be accepted into evidence, so long as the operator is competent and the machine functional.

{¶32} In *Vega*, the court held: "an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." *Id.* at 186. The *Vega* court premised its decision on several considerations.

{¶33} First, the court cited to its prior holding in *Westerville v. Cunningham*, 15 Ohio St.2d 121, 123 (1968), regarding use of breath analysis machines in OVI cases, for the proposition that: "'such tests are today generally recognized as being reasonably reliable on the issue of intoxication when conducted with proper equipment and by competent operators.'" *Vega* at 186.

{¶34} Second, the court noted that the General Assembly confided discretion to determine proper methods of analyzing breath alcohol to the Director of Health, and that the director had designated the machine in question as appropriate. *Vega*, 12 Ohio St.3d at 186-187.

{¶35} Third, the court noted that under the version of R.C. 4511.19 then current, the results of a breath analysis exceeding the statutory level merely created a rebuttable presumption that the defendant was intoxicated, which did not prevent the defendant showing, through other evidence, that he or she was not, in fact, under the influence of alcohol. *Vega*, 12 Ohio St.3d at 188-189.

**{¶36}** Based on this last point, it would appear that *Vega* is no longer good law. The Parma Municipal Court recently so found in *Parma v. Malinowski*, Parma M.C. No. 12TRC 03580 (April 22, 2013) (Spanagel, J.). As that court states:

**{¶37}** "The majority in *Vega* themselves set forth the (sic) in their own logic why *Vega* is no longer good law, when they stated:

**{¶38}** "'Not only does appellee's position fail to give recognition to the legislative determination, *it also misperceives the presumption and the effect of that presumption created by R.C. 4511.19.* The presumption created by R.C. 4511.19 is that the accused was under the influence of alcohol. "The effect of the presumption is to eliminate the necessity of proof by the prosecution of the effect of alcohol on the individual when the level is within the range established by the presumption. *The statute does not create an absolute presumption, but only a rebuttable one* (* * *).'

**{¶39}** "'*This presumption does not, contrary to appellee's arguments, change the presumption of innocence to one of guilt. It merely raises the rebuttable presumption that one was under the influence of alcohol.* Under the statute, *the accused may introduce any other competent evidence bearing upon the question* of whether he was under the influence of intoxicating liquor. (* * *) *There is no question that the accused may also attack the reliability of the specific testing procedure and the qualifications of the operator.* See, e.g., *Cincinnati v. Sand (*1975), 43 Ohio St.2d 79, * * *. *Defense expert testimony as to testing procedures at trial going to weight rather than admissibility is allowed.* Since the *presumption is rebuttable* and the defendant may go forward with evidence, the " (* * *) (d)efendant cannot be heard to complain that the provisions of R.C. 4511.19 eliminate his presumption of innocence or hamper the

12

presentation of his defense." *State v. Myers* [(1971), 26 Ohio St.2d [190,] 201, * * *. The presumption created by the scientific test is thus to be considered by the jury and the court along with the other evidence as to whether or not the accused was intoxicated. Whether the presumption was overcome by the evidence presented is a question of fact for the jury.'

**{¶40}** "Examination of the majority decision itself clearly shows that they believed that the *rebuttable presumption* was able to be addressed by presenting other evidence, including limited attack on the machine result as another item of evidence. Today the test result is not a rebuttable presumption but a *conclusive presumption.* Conclusive presumptions have been previously found to be unconstitutional." (Citing *Sandstrom v. Montana*, 442 U.S. 510 (1979)). (Emphasis sic.) (Parallel citations omitted.) *Malinowski* at 8-9.

**{¶41}** This reasoning is persuasive. Conclusive presumptions being unconstitutional, *Vega* can no longer provide authority that attacks on the reliability of breath analysis machines cannot be made, since the law presently gives the results of such tests, effectively, a conclusive result.

**{¶42}** However, an analysis of the applicable statutes, even within the context of *Vega*, does not lead to the conclusion that a trial court may not demand proof of the Intoxilyzer 8000's reliability.

**{¶43}** R.C. 4511.19(D)(1)(b) states in part:

**{¶44}** "In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court *may* admit evidence on the concentration of alcohol, drugs of abuse, controlled

13

substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation * * * [and] [t]he bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."  (Emphasis added.)

{¶45} The foregoing statute uses the word "may."  "'The statutory use of the word "may" is generally construed to make the provision in which it is contained optional, permissive, or discretionary.'"  *State v. Davie*, 11th Dist. No. 2000-T-0104, 2001 Ohio App. LEXIS 5842, *16 (Dec. 21, 2001), quoting *Dorrian v. Scioto Conserv. Dist.*, 27 Ohio St.2d 102, 107 (1971).  Thus, R.C. 4511.19(D)(1)(b) does not mandate admissibility of the results of the breath test.  Rather, the statute vests the trial court with discretion in making a determination with respect to admissibility, notwithstanding approval from the director of health.  As my colleague, Judge Wright, has recently stated in a series of penetrating dissents:

{¶46} "R.C. 3701.143 empowers the director to approve breath testing devices, and R.C. 4511.19(D)(1)(b) grants trial courts the discretion to admit the results from approved devices without further proof of reliability when circumstances warrant. Although some claim the contrary, nobody is correct all the time.  In recognizing human fallibility, the legislature had the wisdom to vest within the trial court the discretion per R.C. 4511.19(D)(1)(b) to conduct further inquiry when there is an issue as to the

14

reliability of an approved breath testing device before admitting the results." *State v. Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶38.[2]

{¶47} Again, the statutory scheme does not establish the proposition advanced by the state: i.e., results of any breath analysis machine *must* be accepted at trial. Rather, the statutes provide that the Director of Health has sole authority to approve machines – but that the trial courts of Ohio have discretion to accept the results generated by the machines so approved. Further, *Vega* prohibits blanket attacks on the reliability of breath analysis machines generally, and premises this upon the use of "'proper equipment.'" *Vega*, 12 Ohio St.3d at 186. The question raised in this case is the reliability of the Intoxilyzer 8000 specifically. A breath analysis machine could only be "proper equipment" if it *is* reliable.

{¶48} As Judge Wright further noted in *Collazo*:

{¶49} "In this case, the trial court exercised its discretion not to admit the breath test absent proof from the state that the Intoxilyzer 8000 is generally reliable, a decision consistent with the discretion it possesses under R.C. 4511.19(D)(1)(b). As reliability presents a threshold admissibility issue, reliability, as opposed to the weight to be afforded any admitted evidence, is one for the trial court. *Knott v. Revolution Software Inc.*, 181 Ohio App.3d 519, 2009 Ohio 1191, ¶45, * * * (5th Dist.); *State v. Riley*, 6th Dist. No. WD-03-076, 2007-Ohio-879, ¶27 (expert testimony must be deemed reliable

---

2. *See also Johnson*, 11th Dist. No. 2012-P-0008, 2103-Ohio-440; *State v. Schrock*, 11th Dist. No. 2012-P-0022, 2013-Ohi-441; *State v. Harmon*, 11th Dist. No. 2012-P-0067, 2013-Ohio-442; *State v. Funk*, 11th Dist. No. 2012-P-0071, 2013-Ohio-444; *State v. Hatcher*, 11th Dist. Nos. 2012-P-0077 and 2012-P-0078, 2013-Ohio-445; *State v. Webb*, 11th Dist. No. 2012-P-0052, 2013-Ohio-541; *State v. Neice*, 11th Dist. No. 2012-P-0064, 2013-Ohio-542; *State v. Butler*, 11th Dist. No. 2012-P-0066, 2013-Ohio-543; *State v. Lucas*, 11th Dist. No 2012-P-0070, 2013-Ohio-544; *Pizzino*, 11th Dist. Nos. 2012-P-0079 and 2012-P-0080, 2013-Ohio-545; *State v. Kuntz*, 11th Dist. No. 2012-P-0082, 2013-Ohio-546; *State v. McCune*, 11th Dist. No. 2012-P-0089, 2013-Ohio-547; *State v. Zoeckler*, 11th Dist. No. 2012-P-0092, 2013-Ohio-548; *State v. Tagliaferri*, 11th Dist. No. 2012-P-0094, 2013-Ohio-549; *State v. Hinton*, 11th Dist. No. 2012-P-0095, 2013-Ohio-550; *State v. Canino*, 11th Dist. No. 2012-P-0102, 2013-Ohio-551.

before it is deemed admissible.); *Saad v. Shimano American Corp.*, 2000 U.S. Dist. LEXIS 10974, *7 (N.D. Ill. 2000)(The Supreme Court has made it clear that the courts must allow into evidence only expert testimony that meets certain threshold standards of reliability and usefulness).

{¶50} "Moreover, the determination of evidential reliability necessarily implicates the defendant's substantive due process rights.

{¶51} "'Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are "implicit in the concept of ordered liberty." (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available.' *State v. Small*, 162 Ohio App.3d 375, 2005-Ohio-813, ¶11, * * * (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1989).

{¶52} "However vague the conceptual parameters of one's substantive due process guarantees may be, the following principle is clear; '(substantive) (* * *) due process is violated by the introduction of seemingly conclusive, but actually unreliable evidence.' *Barefoot v. Estelle*, 463 U.S. 880, 931, fn. 10, 103 S. * * *." (Parallel citations omitted.) *Collazo*, 11th Dist. No. 2012-L-067, 2013-Ohio-439, ¶41-44.

{¶53} As the Court of Appeals, Tenth Appellate District has observed:

{¶54} "Substantive due process prohibits the government from infringing upon fundamental liberty interests in any manner, regardless of the procedure provided,

unless the infringement survives strict scrutiny; i.e., the government's infringement must be 'narrowly tailored to serve a compelling state interest.' *Reno v. Flores* (1993), 507 U.S. 292, 302, * * *." *In re M.D.*, 10th Dist. No. 07AP-954, 2008-Ohio-4259, ¶9.

{¶55} Case law indicates serious problems regarding the reliability of the Intoxilyzer 8000, which make it incumbent on trial courts to assure the reliability of its results, before allowing those results into evidence. In one case, plaintiff brought a federal action for violation of his Fourth Amendment rights, following his arrest for driving under the influence. *Briggs v. Holsapple*, D.Oregon Civil Case No. 08-6037-KI, 2009 U.S. Dist. LEXIS 11295, *1 (Feb. 11, 2009). Despite considerable indications on the field sobriety tests that the plaintiff was inebriated, his breath test on an Intoxilyzer 8000 resulted in a 0.000% BAC. *Id.* at *6. The state of Oregon brought its own expert in to testify *against* the reliability of the machine. *Id.* at *7. As stated by the district court:

{¶56} "Justin Lazenby, Forensic Scientist, Oregon State Police Toxicology Unit, has reviewed the facts of plaintiff's arrest and has concluded: (a) the Intoxilyzer 8000 underestimates actual BAC 84% of the time; (b) the Intoxilyzer 8000 will round all breath sample results below 0.010% down to 0.000%; (c) based on the alcohol consumption described by plaintiff in his deposition, plaintiff's BAC at the time of driving would be between 0.019% and 0.023%, * * *." *Id.* at *7-8.

{¶57} The state of Ohio does not seem to have access to the "source code" for the Intoxilyzer 8000. *State v. Gerome, et al.*, Athens County M.C. Nos. 11TRC01909, 11TRC00826, 11TRC01734, and 11TRC02434, at 15 (June 29, 2011) (Grim, J.). As

17

the *Gerome* court found, "In the ODH certification of this instrument, access to the source code was apparently not deemed necessary." *Id.*

**{¶58}** "The source code is the human readable format of the software that controls the operation of the Intoxilyzer 8000. In other words, the source code tells the Intoxilyzer 8000 how to calculate the numerical result, such as 0.08. If the source code contains a mistake, then the result generated will be defective." *Montana v. Peters*, 2011 MT 274, 362 Mont. 389, 264 P.3d 1124, ¶4 (Mont. 2011).

**{¶59}** Testimony has been elicited that such widely used devices as smart phones can interfere with the Intoxilyzer 8000 at frequencies it cannot detect. *Gerome* at 20-21.

**{¶60}** One of the liberty interests constitutionally protected by substantive due process is "freedom from bodily restraint and punishment." *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, ¶14. Conviction under the OVI laws can result in deprivation of this liberty interest. Consequently, substantive due process demands that such convictions be premised on proceedings and procedures which are constitutionally proper. The state has a compelling interest in preventing driving while impaired – but any procedure adopted under the OVI laws must be narrowly tailored to serve that interest. Presently, use of the Intoxilyzer 8000 does not meet this standard. I appreciate the writing judge's holding that a defendant is entitled to make specific challenges to the general reliability of the Intoxlyzer 8000 – but it appears that the state itself is unaware of exactly *how* the machine functions, and generates its results. A criminal defendant is deprived of substantive due process when convicted using a procedure which is not merely unknown, but unknowable. Further, a criminal

18

defendant's substantive due process rights cannot be overridden by a legislative enactment, and there is no need to interpret Ohio's laws regarding approval of breath analysis machines in a way that does. Similarly, the decision in *Vega*, premised on the use of "proper equipment," necessarily recognizes the duty of our trial courts to protect defendants' substantive due process rights by requiring them to insure that the equipment is proper. *Vega*, 12 Ohio St.3d at 186.

{¶61} For all the reasons foregoing, I would affirm the judgment of the trial court in all respects. I concur in judgment only.